Kingrale COLLINS *v.* STATE of Arkansas

CR 98-563                                           991 S.W.2d 541

Supreme Court of Arkansas
Opinion delivered June 3, 1999

*Chris Tarver*, for appellant.

*Mark Prior*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant Kingrale Collins brings this appeal from a conviction of capital murder and a death sentence. He does not challenge the sufficiency of the evidence, but raises three points for reversal, challenging the trial court's adverse rulings denying Collins's motion to change venue, refusing his request to proceed *pro se*, and overruling his objection to submission of two aggravating circumstances to the jury during

the sentencing phase of the trial. Our court accepts jurisdiction of this case under Ark. Sup. Ct. R. 1-2(a)(2) because the case is a criminal appeal in which a death sentence has been imposed.

Before considering Collins's points in the order above, we first summarize the facts needed to discuss and dispose of his arguments. In the early morning hours of May 18, 1996, Richard Cox went to Collins's residence, and, for reasons known best to them, they took Collins's twelve-gauge shotgun and proceeded to a trailer court where they rang the doorbell of Charlotte Archer's residence.[1] Archer opted not to open the door when she looked out the window and saw two men with a shotgun outside the door. The men, later identified as Cox and Collins, left the Archer residence after getting no response. Archer said that she heard gunshots moments after the men left. Cox and Collins had gone up the street, knocked on the door of Brandon Sanders's house, where Holly Strickland and her husband were visiting, and when Holly opened the door, the men shot and killed her. Amy Renee Abbott was visiting with Holly at Sanders's, and the two women were in the living room when Holly was shot. Amy said the men shot the gun three times. Amy also said that, during the shooting, she squatted down and fell over, and acted like she was shot. Soon after the shooting at about 3:00 a.m. on May 18, Antonio Milan reported that he saw Collins alone in the parking lot outside a laundromat, and Collins possessed a twelve-gauge shotgun, which had duct tape on its handle. The next day Collins stopped Milan and told Milan that he had "killed the bitch." Collins had a green shell in his mouth when he made the statement. The police obtained a search warrant as a result of their investigation, which permitted them to search Collins's residence. Officers found the shotgun used in Holly's murder in Collins's bedroom, and they also located the same type shells that were used in the shooting. Collins later gave a confession implicating himself in the crime and identifying Cox as the trigger man.

In turning to Collins's first argument, he submits that the trial court erred in denying his motion for change of venue,

---

[1] There was one version given that robbery was a motive, but Collins gave a statement that Cox wanted to shoot someone as a part of an initiation into a gang.

wherein he cited that pretrial publicity made it unlikely he could have a fair trial in Cross County. In making his argument, Collins relied largely on the *voir dire* responses of the venire panel, particularly jurors Jim Kelly, who was chosen foreman, and Seamon Haynes, an alternate juror who never served.

■    This court has held that a criminal case may be removed to a circuit court of another county upon a showing that the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defendant that a fair and impartial trial cannot be had. *Morris v. State*, 302 Ark. 532, 792 S.W.2d 288 (1990). The burden is on the defendant to show the general mindset of the populace and the concomitant impossibility of receiving a fair trial. *Id.* at 536, 792 S.W.2d at 291. In making a determination of the accused's ability or inability to receive a fair trial, the trial court has an opportunity to observe witnesses and to make a determination as to whether or not a particular mindset or prejudice pervades the entire county. *Id.* We will not disturb the finding of the trial court in the absence of an abuse of discretion. *Id.*

■ ■    This court has also held that, where a defendant has failed to exhaust his peremptory challenges prior to the seating of the jury, the defendant is in no position to demonstrate prejudice from a ruling denying his venue motion. *Rankin v. State*, 329 Ark. 379, 948 S.W.2d 397 (1997). That is the situation here. After moving for change of venue, Collins used only eleven of his twelve peremptory challenges. For this reason alone, Collins has failed to demonstrate the prejudice necessary for us to hold that the trial court abused its discretion in denying Collins's motion.

Collins next argues error in the trial court's refusing to allow him to proceed pro se. Collins contends he informed the trial court early that he was unhappy with his appointed attorneys and wished to represent himself or have other attorneys appointed. It is undisputed that Collins was displeased with his counsel. Counsel acknowledged Collins's unhappiness and stated that he would not cooperate; thus, counsel moved to withdraw, alleging Collins would be denied effective assistance of counsel if they continued to represent Collins when he would not communicate with them.

Collins responded, saying, "I just want another lawyer; they are trying to make me cop out, man, [and] I do not understand what they are talking about." The trial court, in denying counsels' motion to withdraw, stated the following:

> It will be the judgment of the court, Mr. Collins, that any motion that you have made to your own attorney will be denied. If you want to go hire any attorney and have him here to assist, just as long as there is no continuance in the matter because of it, that is your choice.

The constitutional right to counsel is a personal right and may be waived at the pretrial stage or at trial. *Mayo v. State*, 336 Ark. 275, 984 S.W.2d 801 (1999). A defendant may proceed pro se in a criminal case when: (1) the request to waive the right to counsel is unequivocal and timely asserted; (2) there has been a knowing and intelligent waiver of the right to counsel; and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *Bledsoe v. State*, 337 Ark. 403, 989 S.W.2d 510 (1999). Determining whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the background, the experience, and the conduct of the accused. *Id.* Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights. *Id.*

In the instant case, Collins never made an unequivocal request to waive counsel. In fact, more than one month prior to trial, Collins related to the trial court that "he just wanted another lawyer." Although the trial court held three additional hearings prior to trial, Collins only continued to express his dissatisfaction with his counsel, but he merely requested he wanted different counsel, not that he desired to represent himself. It is well settled that Collins's right to counsel is not absolute, and he may not use his right to counsel to frustrate the inherent power of the court to command an orderly, efficient, and effective administration of justice. *Edwards v. State*, 321 Ark. 610, 615, 906 S.W.2d 310, 313 (1995).

In his third and final argument, Collins states that, during the sentencing phase, the trial court erred in finding there was suffi-

cient evidence to support the following two aggravating circumstances:

> (1) Collins previously committed another felony, an element of which was the use or threat of violence to another person, or creating a substantial risk of death or serious physical injury to another person, and

> (2) In the commission of the capital murder, Collins knowingly created a great risk of death to a person other than the victim. *See* Ark. Code Ann. § 5-4-604(3) and (4) (Repl. 1997).

In short, Collins asserts that the jury could impose the death penalty only if it finds beyond a reasonable doubt that one or more statutorily defined aggravating circumstances exist, outweigh any mitigating circumstances found to exist, and justify a sentence of death. *Greene v. State*, 335 Ark. 1, 977 S.W.2d 192 (1998). Collins further correctly submits that our court may affirm a jury's finding that an aggravating circumstance exists beyond a reasonable doubt only if the State has presented substantial evidence in support of such element of the aggravating circumstance. *Id.* at 10, 977 S.W.2d at 196. As already mentioned above, Collins claims our court should reverse for resentencing because the State's evidence was insubstantial to affirm the jury's findings on the two aggravators.

The State first contends Collins's argument is procedurally barred because Collins failed to timely move for directed verdict to test the sufficiency of the evidence relating to the two aggravating circumstances or object to their submission to the jury until the jury returned its verdict. *See Willett v. State*, 322 Ark. 613, 911 S.W.2d 937 (1995). The State correctly points out that Collins failed to preserve his sufficiency-of-the-evidence issue pertaining to the second aggravator — knowingly created a great risk of death to a person other than the victim — but Collins did properly object to the aggravating circumstance asserting that he had committed a prior violent felony; therefore, we do address this aggravator. Even so, Collins's objection, as discussed below, was (and is) meritless, and we affirm based on the prior-violent-felony aggravator, since our court has held that the only requirement is that the jury unanimously find at least one of the aggravating cir-

cumstances to exist before it can impose the death penalty. *Dansby v. State*, 319 Ark. 506, 893 S.W.2d 331 (1995).

In proving Collins had committed a prior violent felony, the State offered its Exhibit 28, which contained a criminal information and conviction judgment reflecting that Collins had previously been found guilty of first-degree battery under Ark. Code Ann. § 5-13-201 (Repl. 1997) — a Class B felony. Collins objected, insisting that the documents could not be admitted into evidence because the individual documents were not certified. The documents showed that Collins, on October 15, 1993, by using a deadly weapon, caused serious physical injury to Jason Daniels. Without proper certification of these documents, Collins argues that the State failed to prove he had been convicted of a prior violent felony.

First, we note that, as the court has held in *Greene*, 335 Ark. 1, 977 S.W.2d 192 (1998), the State need only prove that a felony was previously *committed* and that the prior felony necessarily involved use or threat of violence to another. (Emphasis provided.) There is no requirement of proof of *conviction* of a crime. 335 Ark. at 13, 977 S.W.2d at 197. (Emphasis provided.) Collins is wrong, however, that the State failed to introduce certified documents to prove he committed a prior violent felony. The State's Exhibit 28 was collectively certified as documents showing Collins had been convicted of a prior Battery I charge, and it is undisputed that the documents showing that felony came from the State's certified case file. Collins even agreed to this fact at trial. Accordingly, we hold that the trial court was correct in allowing these documents into evidence and that the documents show beyond a reasonable doubt that Collins committed the aggravating circumstance of a prior violent felony under § 5-4-604(3). Moreover, because the jury found the evidence was insufficient to prove that a mitigating circumstance probably existed, *see* AMCI2d 1008 (Form 2, "Mitigating Circumstances"), even if Collins might have shown error in giving the great-risk-of-death aggravator, the error would have been harmless under Ark. Code

Ann. § 5-4-603(d) (Repl. 1997; *Hill v. State*, 331 Ark. 312, 962 S.W.2d 762, cert. denied, 119 U.S. 145 (1998).[2]

The record in this case has been examined for errors prejudicial to the defendant in accordance with Ark. Sup. Ct. R. 4-3(h), and no reversible errors have been found. Hence, for the reasons above, we find no error in the trial court's rulings and therefore affirm Collins's conviction and sentence of death.

---

[2] Our statement in no way implies that the "great-risk-of-death aggravator" was given in error. The State offered evidence that supported this aggravating circumstance, but we simply need not reach the merits bearing on this additional aggravator because it is unnecessary to do so.