Jeffery D. MORGAN  *v.*  STATE of Arkansas

CR 03-1476                                    195 S.W.3d 889

Supreme Court of Arkansas
Opinion delivered October 14, 2004

*Buckley, McLemore & Hudson, P.A.*, by: *Kent McLemore*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brent P. Gasper*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Jeffery D. Morgan appeals the order of the Miller County Circuit Court convicting him of battery in the second degree and kidnapping. He was sentenced to terms of imprisonment of fifteen years and life, respectively. On appeal, he argues that the trial court erred in: (1) denying his motion for a directed verdict with regard to the kidnapping charge; (2) refusing to allow him to proceed *pro se*; and (3) allowing the State to introduce evidence of prior bad acts during the trial. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We find no error and affirm.

On August 12, 2002, Appellant drove to the home of Amanda Simmons, his former girlfriend. Once there, he attempted to talk to her, but Ms. Simmons told Appellant that she had nothing to say to him and asked him to leave. Appellant got into his vehicle and then struck Ms. Simmons as she walked to a nearby mailbox. Appellant again exited his vehicle and began to kick Ms. Simmons and drug her into his vehicle. He then drove around while he threatened to kill Ms. Simmons. At one point, Appellant held a knife to her throat and ordered Ms. Simmons to take a bunch of pills, but she was able to spit the pills back out. After Appellant stopped at a friend's house, Ms. Simmons attempted to escape but was caught by Appellant who again tried to run over her.

Ms. Simmons begged Appellant to take her to a hospital so she could receive treatment for her leg that was injured when Appellant ran over her. Initially, Appellant refused and only agreed to take her to a hospital after Ms. Simmons promised to lie about the cause of her injury. Before entering the hospital, Ms. Simmons agreed to tell the hospital staff that she was involved in a four-

wheeler accident. Ms. Simmons was admitted to the hospital and surgery was ordered to repair her broken leg. Appellant remained near Ms. Simmons's side during her initial admittance, at one point signing an authorization form after he identified himself as her "husband." Appellant also instructed the nurses that Ms. Simmons wanted no calls or visitors.

Sometime later, Appellant left the hospital in order to retrieve clothes and makeup for Ms. Simmons. Once Appellant left, Ms. Simmons contacted hospital security, expressing fear that Appellant might return and harm her. She decided to be classified as a "no information" patient, meaning that the hospital would not release any information on her. She was also moved to a different hospital room.

Ms. Simmons contacted Paula Cochran of the Texarkana Police Department on August 15, 2002, and made a statement that Appellant had hit her with his car on August 12. Thereafter, on October 2, 2002, a felony information was filed charging Appellant with kidnapping and first-degree battery. Prior to trial, Appellant indicated that he was dissatisfied with his appointed attorney because he would not pursue certain motions that Appellant had attempted to file. The trial court explained to Appellant the perils of representing himself and eventually ruled that the appointed counsel would continue to represent Appellant.

A jury trial was held on August 19-20, 2003, and resumed on August 26, 2003. Several medical personnel employed at St. Michael's Hospital testified about their encounter with Ms. Simmons upon her admission there. Roger Stanley, a registered nurse, testified that he was responsible for assessing Ms. Simmons's condition upon her admission. According to Stanley, Appellant signed an admission form on behalf of Ms. Simmons, after indicating that he was her husband. Stanley also testified that he recalled no specific problems between Appellant and Ms. Simmons.

Misty Rhoden, a floor nurse responsible for patient care, also testified that she first had contact with Ms. Simmons on August 13. Rhoden recalled that a male friend was at Ms. Simmons's bedside when she stated that the injury to her leg was the result of a four-wheeler accident. Rhoden also testified that Pamela Kroll, Ms. Simmons's mother, called and expressed concern that Appellant might be responsible for her daughter's injuries. When Rhoden first told Ms. Simmons that her mother had called, Ms.

Simmons told the nurse to tell her mother that "I am out of it at that time." Appellant then told Rhoden that they wanted no phone calls or visitors. Rhoden also testified that she did not notice any problems between Ms. Simmons and Appellant.

Kay Caballero, a security employee for St. Michael's, testified that she was called in to pick up some valuables in Ms. Simmons's room. At that time, Appellant was in the room, and according to Caballero, she noticed an uncomfortable feeling between the two. Later, once Appellant was no longer there, Appellant again contacted Caballero and asked if there was any way Appellant could be kept away from her room. This occurred on August 13, at approximately 4:25 p.m. Ms. Simmons was subsequently designated as a "no information" patient and moved to another room.

Also testifying at trial was Detective Cochran. According to her, Ms. Simmons contacted her on the afternoon of August 15, 2002. She reported that Appellant had run over her with his vehicle and, as a result, she was in the hospital with a broken leg. Ms. Simmons told Detective Cochran that Appellant was trying to kill her and that she was afraid that he was going to hurt her in the hospital, because he had threatened her since she had been there. Detective Cochran also testified that she was aware of a history of complaints made by Ms. Simmons against Appellant.

Mary Works, Ms. Simmons's grandmother, testified that she first saw Appellant on the evening of August 12, at approximately 8:00 p.m., when he drove by her house and honked his horn demanding that Ms. Simmons come and talk to him. Works next saw Appellant at approximately 1:00 a.m., when he came back to her house so that he could retrieve some clothes and makeup for Ms. Simmons. He told Works that her granddaughter was in the hospital with a broken leg after being involved in a "three-wheeler" wreck.

Ms. Simmons testified that she had been dating Appellant for about two and a half years, but that they had recently split. She described how Appellant struck her with his vehicle and then forced her into the car. She said Appellant told her that he was going to have to kill her. Ms. Simmons explained that the only way she could convince Appellant to take her to the hospital was to promise to lie about the cause of her injuries. Once Ms. Simmons agreed to tell the hospital employees that she was injured while riding a four wheeler, Appellant took her to the emergency room

at St. Michael's. At the hospital, Appellant continued to threaten to harm Ms. Simmons and her family if she told anyone the truth about her injuries.

At the close of the State's case, Appellant moved for a directed verdict. With regard to the charge of kidnapping, he argued that the evidence demonstrated that he had released Ms. Simmons at a place of safety. The trial court denied his motion. Appellant then rested without presenting any evidence. The jury subsequently convicted Appellant of kidnapping, a Class Y felony, and battery in the second degree. He was sentenced as a habitual offender to life imprisonment on the charge of kidnapping and fifteen years' imprisonment on the battery charge. This appeal followed.

### I. Motion for Directed Verdict

For his first point on appeal, Appellant argues that the trial court erred in denying his motion for a directed verdict as to the charge of kidnapping. Specifically, Appellant argues that the evidence demonstrated that he released Ms. Simmons at a place of safety, the hospital, and, thus, under Ark. Code Ann. § 5-11-102(b) (Repl. 1997), Appellant can only be found guilty of a Class B felony kidnapping charge. The State counters that the issue of whether Appellant released the victim at a place of safety was a fact question properly submitted to the jury. The State is correct.

■■ This court treats a motion for directed verdict as a challenge to the sufficiency of the evidence. *Benson v. State*, 357 Ark. 43, 160 S.W.3d 341 (2004); *Tester v. State*, 342 Ark. 549, 30 S.W.3d 99 (2000). When reviewing the denial of a directed-verdict motion, we will look at the evidence in the light most favorable to the State, considering only the evidence that supports the verdict and will affirm if there is substantial evidence to support the jury's conclusion. *Burmingham v. State*, 342 Ark. 95, 27 S.W.3d 351 (2000). Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or the other and permits the trier of fact to reach a conclusion without having to resort to speculation or conjecture. *Greene v. State*, 335 Ark. 1, 977 S.W.2d 192 (1998).

A person commits the offense of kidnapping if, without consent, he restrains another person so as to interfere substantially with his liberty for the purpose of holding him for ransom or reward, or for any act to be performed or not performed for his

return or release, or for inflicting physical injury upon him, or of engaging in sexual intercourse, deviate sexual activity, or sexual contact with him. Ark. Code Ann. § 5-11-102(a)(1) & (a)(4) (Repl. 1997). "Restraint without consent" includes "restraint by physical force, threat, or deception[.]" Ark. Code Ann. § 5-11-101(2) (Repl. 1997). Kidnapping is a Class Y felony, except that if the defendant shows by a preponderance of the evidence that he voluntarily released the person restrained alive and in a safe place prior to trial, it is a Class B felony. Section 5-11-102(b).

The jury convicted Appellant of kidnapping, a Class Y felony, but in his directed-verdict motion Appellant argued that there was insufficient evidence to support that charge, because the evidence demonstrated that he released his victim in a safe place. Thus, according to Appellant, he should have been convicted of the reduced charge of kidnapping, a Class B felony. The trial court denied Appellant's motion, stating in relevant part:

> The evidence is at this point is not refuted that the defendant did take Ms. Simmons to the emergency room facility of St. Michael's hospital. That did take place. And that is certainly looking at that step alone would be in the defendant's favor. The other testimony, from not only the victim, but the medical personnel, shows that the defendant was still exercising some control over the victim even while at the hospital up to a point in time that a report was made by the victim, and or her family members, that the injuries she had sustained were not the result of a four-wheeler accident, but in fact, by the actions . . . of the defendant toward the victim.

> Those then put into question, those then — that testimony then puts into question about whether or not the defendant had actually relinquished his control or his influence over the victim at that point in time. And because of those actions, because of the testimony of the medical personnel alleged in their testimony as to what the defendant said to them, upon their arrival at the hospital, I think it is a question of fact for the jury to determine whether or not the actions of the defendant constitute a release or didn't constitute a release at a safe location, and therefore I would deny the defendant's motion on the second part and find that at this point the kidnapping charge Class Y felony still stands.

We agree with the trial court that the evidence as presented created a fact question to be decided by the jury. A couple of the nurses who attended Ms. Simmons testified that they

did not notice any trouble between her and Appellant. Ms. Caballero, the security officer, testified, however, that she noticed tension between Appellant and Ms. Simmons during her initial encounter with them. According to Nurse Stanley, Appellant signed a patient form on behalf of Ms. Simmons stating that he was her husband. Nurse Rhoden testified that when she informed Ms. Simmons that her mother had called, Appellant spoke up and told her that they did not want any phone calls or visitors. The testimony of medical personnel also indicated that Appellant stayed at Ms. Simmons's bedside for several hours after she was admitted to the hospital. Moreover, Ms. Simmons testified that she lied to hospital personnel about the cause of her injuries because Appellant had threatened to harm her and her family. It was only after Appellant left the hospital that Ms. Simmons told a nurse and hospital security the real cause of her injuries and asked that she be classified as a "no information" patient. Considering this evidence, the jury determined that Appellant failed to prove by a preponderance of the evidence that he released Ms. Simmons in a safe place. As we have repeatedly stated, it is not within this court's province to try issues of fact. *See Mills v. State*, 351 Ark. 523, 95 S.W.3d 796 (2003); *Sanford v. State*, 331 Ark. 334, 962 S.W.2d 335 (1998). Accordingly, Appellant's argument on this point fails.

## II. Waiver of Right to Counsel

Next, Appellant argues that he attempted to discharge his counsel and proceed *pro se*, and the trial court failed to conduct an inquiry into whether he was knowingly or intelligently waiving his right to counsel and ignored his attempts to dismiss counsel. Appellant also asserts that the trial court erred in finding that his purported waiver of counsel was not timely made. The State counters that the trial court committed no error in this regard, as Appellant failed to unequivocally assert his desire to waive his right to counsel. We find no error.

First, we must note that Appellant's argument on this point is simply that the trial court erred in forcing him to go to trial with the representation of counsel. Based on this assertion, he asks this court to reverse his conviction. Notably absent from his argument is any assertion that Appellant was prejudiced as a result of the trial court's ruling with regard to the waiver of counsel. It is axiomatic that some prejudice must be shown in order to find grounds to reverse a conviction. *Jefferson v. State*, 328 Ark. 23, 941

S.W.2d 404 (1997); *see also Berna v. State*, 282 Ark. 563, 670 S.W.2d 434 (1984), *cert. denied*, 470 U.S. 1085 (1985) (announcing the rule that it is "no longer presumed that simply because an error is committed it is prejudicial error."). Stated differently, we do not reverse a decision by the trial court absent a showing of prejudice. *See Stivers v. State*, 354 Ark. 140, 118 S.W.3d 558 (2003).

■ Assuming, *arguendo*, that Appellant was prejudiced, his argument on this point is still without merit, as he failed to unequivocally waive his right to counsel. The United States Supreme Court addressed the right of a criminal defendant to proceed *pro se* in *Faretta v. California*, 422 U.S. 806 (1975), stating that "in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits [traditionally associated with the right to counsel]." *Id.* at 835. Likewise, this court has recognized that the constitutional right to counsel is a personal right and may be waived at the pretrial stage or at trial. *Collins v. State*, 338 Ark. 1, 991 S.W.2d 541 (1999); *Mayo v. State*, 336 Ark. 275, 984 S.W.2d 801 (1999). A criminal defendant may invoke his right to defend himself *pro se* provided that (1) the request to waive the right to counsel is unequivocal and timely asserted; (2) there has been a knowing and intelligent waiver of the right to counsel; and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *Id.*; *Hatfield v. State*, 346 Ark. 319, 57 S.W.3d 696 (2001), *cert. denied*, 536 U.S. 963 (2002).

Appellant asserts that he did in fact attempt an unequivocal waiver of his right to counsel, but this assertion is not supported by the record before us. The record reveals that Appellant attempted to file several *pro se* motions, but was not allowed to do so because of his failure to serve the State with copies of the motions. In discussing those motions at a pretrial hearing on May 6, 2003, Appellant never asserted that he wanted to represent himself in this matter. Instead, he stated that he had attempted to contact the public defender's office to find out who would be representing him and about filing the motions he wanted to pursue. When addressing the court, Appellant specifically stated that he had asked for representation. Again, at a hearing held on August 18, 2003, Appellant stated that he was dissatisfied with his appointed counsel. He stated:

> And I ask that Mr. Potter be dismissed and appoint, another counsel appointed. As you can, as the Court can see by the motions

that I filed, I am not, you know, I am not that high grade of education and filing these motions I don't have no legal, access to a legal library to where I can look it up to see what I have to do.

It is apparent that Appellant did not seek to represent himself; rather he sought the appointment of different counsel. The present situation is similar to one this court addressed in *Collins*, 338 Ark. 1, 991 S.W.2d 541, where we rejected an appellant's contention that it was error for the trial court to refuse to allow the appellant to proceed *pro se*. In that case, we noted that it was undisputed that the appellant was displeased with his counsel, but held that he failed to make an unequivocal request to waive counsel. This was based on the appellant's request for another lawyer made one month prior to trial. We agree with our reasoning in *Collins* that a defendant's right to counsel is not absolute and "he may not use his right to counsel to frustrate the inherent power of the court to command an orderly, efficient, and effective administration of justice." *Id*. at 6, 991 S.W.2d at 545 (citing *Edwards v. State*, 321 Ark. 610, 906 S.W.2d 310 (1995)).

### III. Rule 404(b)

For his final point on appeal, Appellant argues that the trial court erred in allowing the State to introduce evidence about prior incidents of violence involving him and Ms. Simmons. Appellant contends that such evidence was not relevant and was highly prejudicial and, thus, should have been excluded. The State counters that the evidence was properly admitted under Ark. R. Evid. 404(b) to show an absence of mistake on the part of Appellant. We agree with the State.

Rule 404(b) states:

*Other Crimes, Wrongs, or Acts*. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *McCoy v. State*, 354 Ark. 322, 123 S.W.3d 901 (2003), this court stated that pursuant to Rule 404(b), evidence of other crimes may be admissible to prove motive, opportunity,

intent, preparation, plan, knowledge, identity, or absence of mistake or accident. This court held that if the evidence of another crime, wrong, or act is relevant to show that the offense of which the appellant is accused actually occurred and is not introduced merely to prove bad character, it will not be excluded. *Id.* The test for establishing motive, intent, or plan as a Rule 404(b) exception is whether the evidence of the other act has independent relevance. *Id.* In addition, to be probative under Ark. R. Evid. 403, the prior criminal act must be similar to the crime charged. *See Sasser v. State*, 321 Ark. 438, 902 S.W.2d 773 (1995).

Thus, in order to determine whether the evidence of the other incidents were properly admitted in this case, we must determine if such evidence is independently relevant. Ms. Simmons's testified that there were two prior incidents when Appellant had been violent toward her. The first occurred on July 4, 2002, when Appellant tried to drown Ms. Simmons as she took a bath. He also grabbed a knife and attempted to stab Ms. Simmons's sister. Appellant then grabbed Ms. Simmons and drug her outside and hit her. The second incident occurred on July 13, 2002. On that day, Ms. Simmons went to the Twilight Motel to visit her mother, Pamela Kroll. Appellant arrived and pulled a knife on Ms. Simmons and hit her in the chest with the butt of the knife after her mother called the police. He threatened to kill everyone in the room.

The State introduced this evidence to establish that Appellant acted with a purposeful intent and that there was a lack of mistake or accident. Appellant's defense to the charges against him was that he was innocent. Specifically, Appellant alleged that Ms. Simmons's original story that her injuries had been caused by a four-wheeler accident was the truth. In *Barrett v. State*, 354 Ark. 187, 119 S.W.3d 485 (2003), this court stated that when the purpose of evidence is to show motive, anything and everything that might have influenced the commission of the act may, as a rule, be shown. *See also Lee v. State*, 327 Ark. 692, 942 S.W.2d 231; *cert. denied*, 522 U.S. 1002 (1997). Moreover, the State is entitled to produce evidence showing circumstances which explain the act, show a motive, or illustrate the accused's state of mind. *Id.* In sum, the evidence of prior violence introduced in this case proved Appellant acted with a purposeful intent, as he had previously exhibited violence toward Ms. Simmons. The fact that the previous acts were not ones in which he struck her with a vehicle is

irrelevant. Under our case law, the previous acts do not have to be identical, just similar. *See Sasser*, 321 Ark. 438, 902 S.W.2d 773. Accordingly, we find no merit in Appellant's argument on this point.

### *IV. Rule 4-3(h) Review*

Because Appellant received a sentence of life imprisonment, the record in this case has been reviewed pursuant to Ark. Sup. Ct. R. 4-3(h) for adverse rulings objected to by Appellant but not argued on appeal. No such reversible errors were found. For the aforementioned reasons, the judgment of conviction is affirmed.