Brent WILLIAMS and Lemeya·Givens  *v.*
ARKANSAS DEPARTMENT of HEALTH and
HUMAN SERVICES

CA 06-1492                                    257 S.W.3d 574

Court of Appeals of Arkansas
Opinion delivered May 23, 2007

[Rehearing denied June 13, 2007.]

*Jennifer Oyler Olson*, for appellant Lemeya Givens.

*James H. Phillips*, for appellant Brent Williams.

*Gray Allen Turner*, Office of Chief Counsel, for appellee.

ROBERT J. GLADWIN, Judge. Appellants Brent Williams and Lemeya Givens appeal the order terminating parental rights filed in the Pulaski County Circuit Court on October 9, 2006. Appellants contend that the trial court did not have sufficient evidence before it to support its decision to terminate parental rights, and that the trial court erred in denying their request to proceed pro se. We affirm.

Initially we address appellee Arkansas Department of Health and Human Services's (DHHS) Motion to Strike Portions of the Record, filed with this court on February 13, 2007. The motion requests that the portion of the record from Pulaski County JN 2005-1585 included in the appellant's record on appeal of the instant case, Pulaski County JN 2006-158, be stricken as a violation of Ark. Sup.Ct. R. 6-9. Appellants argue that the portion of the record had been incorporated by the trial court without objection from DHHS at the beginning of the termination hearing. Further, appellants claim that regardless of whether DHHS made a contemporaneous objection, the trial court's incorporation of her previous ruling on the same issue in a different case is not a violation of Rule 6-9. We deny DHHS's motion to strike because DHHS did not make a contemporaneous objection, thereby failing to preserve this issue for appellate review. *E.g., Callahan v. Clark*, 321 Ark. 376, 901 S.W.2d 842 (1995).

*Facts*

On January 19, 2006, L.W., born December 29, 2004, and B.W., born February 12, 2004, were taken into DHHS custody based upon allegations of physical abuse. On January 20, 2006, an ex parte order for emergency custody was filed placing custody of the children with DHHS. A probable-cause order was filed Janu-

ary 26, 2006, wherein the court found probable cause that the children had been dependent-neglected, and that the children should remain in the custody of DHHS. At the adjudication hearing on March 17, 2006, the trial court found that the allegations of abuse were supported by proof beyond a reasonable doubt.[1] The trial court made a finding that both children were dependent-neglected based on medical neglect and parental unfitness by both parents. The evidence presented at the adjudication hearing indicated that this case began with a call to the child-abuse hotline on January 19, 2006, reporting a bone fracture in L.W. L.W. was later discovered to have ten fractured ribs and a fractured leg. B.W. was discovered to have a fractured leg that was in the process of healing. B.W.'s fracture was between two and six months old at the time it was discovered. Neither parent was aware of either child's injuries until L.W. would not get up and had a swollen leg. A couple of days later, a lump developed on L.W.'s leg, and a couple of days after that, on January 19, 2006, the parents took L.W. to the hospital. Neither parent gave satisfactory explanations for the children's injuries, the mother claiming that L.W. fell off her lap, and the father stating that B.W. caught her leg in the crib railing. Neither child had received any medical treatment prior to this litigation.

On March 30, 2006, the trial court held a hearing and filed an order on the disposition of the case. The trial court found by clear and convincing evidence that the children were dependent-neglected and ordered that the children remain in DHHS custody. The goal of the case at that time was reunification of the children and their mother. The concurrent goal was set as adoption or guardianship. On May 22, 2006, the court held a hearing on the written recommendation of DHHS and the attorney ad litem for no reunification services to be provided by DHHS to the parents. The court filed an order on June 14, 2006, finding beyond a reasonable doubt that the parents had subjected the children to aggravated circumstances as follows:

(1) the children have been chronically abused;

(2) the children have been subjected to extreme or repeated cruelty;

---

[1] The standard of proof employed by the trial court was that of reasonable doubt because it had not yet been determined whether the case involved the Indian Child Welfare Act, which requires the higher standard of proof.

(3) there is little likelihood that services to the family will result in successful reunification because both children have sustained serious injuries and neither parent has given any explanation for these injuries; thus, without knowing the true reason for the underlying injuries to the children, then the Court can never know when the cause of the removal has been remedied.

By order of June 23, 2006, the trial court changed the goal of the case plan to adoption and authorized a plan for termination of parental rights. A petition to terminate parental rights was filed July 3, 2006. On August 9, 2006, the trial court filed an order relieving appellant father's attorney of record, and appointing attorney Jim Phillips to represent the father. On the same day, the appellant mother's attorney moved to withdraw. At the termination hearing held September 22, 2006, both parents moved to be allowed to represent themselves. The trial court denied their request, and allowed her reasoning for this decision, which had been stated on the record in a separate case involving these parties, to be incorporated in the record in the instant case. An order terminating parental rights was filed October 9, 2006, and this appeal was timely filed on October 23, 2006.

### Sufficiency of the evidence

The standard of review in cases involving the termination of parental rights is well established. Arkansas Code Annotated section 9-27-341(b)(3) (Supp. 2005) requires an order terminating parental rights to be based upon clear and convincing evidence. *Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *E.g., Lewis v. Ark. Dep't of Human Servs.*, 364 Ark. 243, 217 S.W.3d 788 (2005). When the burden of proving a disputed fact is by clear and convincing evidence, the question that must be answered on appeal is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence was clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Gregg v. Ark. Dep't of Human Servs.*, 58 Ark. App. 337, 952 S.W.2d 183 (1997). Such cases are reviewed de novo on appeal. *Wade v. Ark. Dep't of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999). However, appellate courts do give a high degree of deference to the trial

court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

When the issue is one involving the termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. *Ullom v. Ark. Dep't of Human Servs.*, 340 Ark. 615, 12 S.W.3d 204 (2000). Termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. *Id.* Nevertheless, parental rights will not be enforced to the detriment or destruction of the health and well being of the child. *Crawford v. Ark. Dep't of Human Servs.*, 330 Ark. 152, 951 S.W.2d 310 (1997). Parental rights must give way to the best interest of the child when the natural parents seriously fail to provide reasonable care for their minor children. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997).

Arkansas Code Annotated section 9-27-341(b) (Supp. 2005) provides in pertinent part as follows:

> (3) An order forever terminating parental rights shall be based upon a finding by clear and convincing evidence:
>
> (A) That it is in the best interest of the juvenile, including consideration of the following factors:
>
> (i) The likelihood that the juvenile will be adopted if the termination petition is granted; and
>
> (ii) The potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent, parents, or putative parent or parents; and
>
> (B) Of one (1) or more of the following grounds:
>
> . . .
>
> (ix)(*a*) The parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to:
>
> . . .
>
> > (*3*)(*A*) Have subjected any juvenile to aggravated circumstances.

(B) "Aggravated circumstances" means:

(i) A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification. . .

Ark. Code Ann. § 9-27-341(b)(3)(A), (B)(ix)(a)(3)(A)-(B)(i).

Appellants argue that the trial court's findings are not supported by the weight of the evidence. They argue that during the time following the disposition order, they cooperated with every order of the trial court and there was no evidence to indicate anything to the contrary. They claim that nothing new was offered to show unfitness or for any grounds for termination.

DHHS and the attorney ad litem maintain that the appellants' argument regarding sufficiency of the evidence does not clearly articulate which of the trial court's findings was clearly erroneous or how the evidence was insufficient and, therefore, is considered abandoned on appeal. *Benedict v. Ark. Dep't of Human Servs.*, 96 Ark. App. 395, 242 S.W.3d 305 (2006). Even so, both appellees contend that the appellants' reliance on the fact that they fully cooperated with reunification services is misplaced.

DHHS argues that where a parent has subjected a child to aggravated circumstances, reunification services do not have to be provided. *Brewer v. Ark. Dep't of Human Servs.*, 71 Ark. App. 364, 43 S.W.3d 196 (2001). Here, DHHS contends that the aggravated circumstances stem from the physical abuse of both children, which resulted in bone fractures in both children. We agree with DHHS and affirm, holding that the trial court had before it clear and convincing evidence of the children's abuse, and therefore, the decision to terminate parental rights was not clearly erroneous. Because we affirm based upon DHHS's aggravated-circumstances argument, we do not reach DHHS's other arguments in support of affirmation on this point.

*Request to proceed pro se*

Appellants also argue on appeal that the trial court erred in denying their request to proceed pro se. They ask this court to hold that they properly waived their right to counsel. In *Bearden v. Arkansas Department of Human Services*, 344 Ark. 317, 325, 42

S.W.3d 397, 402 (2001), our supreme court stated, "It is ... well established that an accused has a constitutional right to represent himself and make a voluntary, knowing, and intelligent waiver of his constitutional right to the assistance of counsel in his defense. But every reasonable presumption must be indulged against the waiver of fundamental constitutional rights."

This court set forth the factors used to evaluate whether a parent has made a valid waiver of the right to counsel in *Battishill v. Arkansas Department of Human Services*, 78 Ark. App. 68, 82 S.W.3d 178 (2002), where we said,

> [o]ur supreme court has found that a waiver of the fundamental right to the assistance of counsel is valid only when 1) the request to waive the right of counsel is unequivocal and timely asserted; 2) there has been a knowing and intelligent waiver of the right to counsel; and 3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *Bearden v. Arkansas Dep't of Human Servs.*, 344 Ark. 317, 42 S.W.3d 397 (2001). In order to effectively waive counsel the parent must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and that he has made his choice with his eyes open." *Bledsoe v. State*, 337 Ark. 403, 406, 989 S.W.2d 510, 512 (1999) (citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). The determination of whether there has been an intelligent waiver of the right to counsel depends on the particular facts and circumstances of each case, including the background, the experience, and the conduct of the accused. *Id.* Every reasonable presumption must be indulged against the waiver of a fundamental constitutional right to counsel. *Daniels v. State*, 322 Ark. 367, 372, 908 S.W.2d 638, 640 (1995).

*Battishill*, 78 Ark. App. at 72, 82 S.W.3d at 180.

Appellants argue that they properly waived their right to counsel and should have been allowed to proceed pro se. They argue that they both sought to proceed pro se, and on August 10, 2006, during a probable-cause hearing held in Pulaski County JN2005-1585, which involved appellants' minor child T.G. who passed away on August 18, 2006, the trial court took up the motions to proceed pro se in both cases. At that hearing, the trial court extensively questioned the appellants, whose answers were summarized in appellants' abstract as follows:

We understand that we have a right to an attorney in these dependency neglect proceedings. We also have a right in these dependency neglect proceedings to attorneys appointed to represent us if we are unable to hire our own attorneys. We are aware that the court has appointed attorneys for us. We are not attorneys nor have either of us been to law school or trained in the law. We have studied the law. We have studied everything, their codes, as far as recommendations to terminate parental rights and so forth, seizures of children. We understand that it is wise and prudent to have the advice and the assistance of attorneys to represent them and to protect their rights. We understand it is not advisable to not have an attorney to represent us during the trial proceedings. We have not gone through the training required by attorneys to represent parents in Arkansas, especially in these types of specialized hearings. We are not quite sure if we understand the rules of evidence that cover civil proceedings. We know some of the requirements that attorneys have to hold themselves to particular standards, court room decorum, court room procedure, and stuff like that. We understand we would be held to the same standards as all of the attorneys in this case. We further understand the court could not bend one way or the other to help us. We are not quite sure how to file an appeal but we intend to be filing a couple in the future. We are both high school graduates, ages twenty-one and twenty respectively.

At the beginning of the termination hearing in the instant case, both parents renewed their request to represent themselves, and those requests were denied. Upon appellants' motion, the trial court incorporated the proceedings as set forth above, as well as the trial court's findings in the earlier proceeding, into the record for the purpose of detailing the reasoning for the trial court's denial of the request to proceed pro se.

Appellants claim that they met the requirements set forth in the case law, in that they voluntarily, knowingly, and intelligently waived their right to counsel. Therefore, they argue that because they met the requirements to proceed pro se, this court must reverse and remand for a hearing in which they are allowed to represent themselves.

■ We hold that the trial court erred in finding that the appellants did not make a knowing and intelligent request for waiver of counsel. Based upon the testimony as recited above, the appellants' waiver was made in an unequivocal and timely manner,

and there was no evidence before the trial court of any conduct by appellants that would prevent the fair and orderly exposition of the issues. Therefore, our next inquiry leads us to whether the trial court's denial prejudiced the appellants.

Both DHHS and the attorney ad litem contend, and we agree, that appellants must show prejudice or harm as a result of having appointed counsel represent them at the termination hearing. In *Morgan v. State*, 359 Ark. 168, 195 S.W.3d 889 (2004), the criminal defendant argued on appeal that his conviction should be reversed because the trial court erred in denying his request to proceed pro se. Our supreme court noted an absence from appellant's argument that he was prejudiced as a result of the trial court's ruling. The court held that it is axiomatic that some prejudice must be shown in order to find grounds to reverse a conviction. *Id.* at 176, 195 S.W.3d at 894.

■ Applying the supreme court's reasoning in *Morgan* to the case at hand, appellants must have been prejudiced by the trial court's denial of their request to proceed without representation in order to obtain relief. The appellant father stated on direct examination by his attorney that "since you were appointed my attorney two or so months ago, you have been better than a private attorney. I mean, you have really been there. . . . You have been responsive to what I have asked [and] have represented me appropriately." DHHS argues that neither parent made any complaints about their counsel. Therefore, even though the trial court erred in denying appellants' request to proceed pro se, that error, by appellants' own admission, did not cause them to suffer prejudice.

Accordingly, we affirm the trial court's order denying the appellants' request to proceed pro se.

Affirmed.

HART and ROBBINS, JJ., agree.