Charley Earl JARRETT  *v.*  STATE of Arkansas

CR 07-56                                        263 S.W.3d 538

Supreme Court of Arkansas
Opinion delivered September 27, 2007

*Gary W. Potts*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

Paul Danielson, Justice. Appellant Charley Earl Jarrett brings this appeal from the circuit court's final judgment finding him guilty of rape and sentencing him to life imprisonment. Our court has jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(a)(2) (2007). Jarrett's sole point on appeal is that the circuit court erred in denying his motion to dismiss his defense counsel, thereby not allowing Jarrett to represent himself at trial. We find no error and affirm.

In this appeal, Jarrett does not challenge the sufficiency of the evidence supporting his conviction and, as such, only a brief summary of the underlying facts is necessary. Jarrett was charged with the rape of W.L., the eleven-year-old daughter of his live-in girlfriend. W.L. testified at trial that on more than one occasion Jarrett had put his "privates" inside her "privates." On December 7, 2005, W.L. gave birth to a premature baby, and the DNA evidence presented at trial was that the probability that Jarrett was the father was 99.99%. A jury subsequently convicted Jarrett for the rape of W.L. and fixed his sentence at life imprisonment. Jarrett now appeals on the sole point that he should have been allowed to represent himself at trial.

A review of the record reflects that Jarrett attempted to have his defense counsel, Mr. Gary Potts, dismissed from the case at various times throughout the proceedings before his trial took place. On May 8, 2006, a hearing was held at which Jarrett first began to complain about his representation. Mr. Potts explained to the court that there was an issue which Jarrett wished for him to address with the court, however, he believed there was no basis upon which to file a motion. When Jarrett began to argue the issue to the court himself, the court explained to him that Mr. Potts was his attorney and if Jarrett would like Mr. Potts to be dismissed, he needed to file a motion.

A second hearing was held on June 12, 2006, as requested by Mr. Potts, to discuss a motion filed by the defense to have the case dismissed. After the court denied that motion, Jarrett pled to the court that the motion to dismiss was not the motion he wished to file, asserted that there were outstanding discovery issues, and again complained to the court about his counsel. Both Mr. Potts and the prosecutor assured the court that there were no discovery issues outstanding and, to be certain, the court ordered that Mr. Potts be able to review the State's file that very day. Jarrett then made his first request to the circuit court that Mr. Potts "step down so someone [could] represent [him]" and informed the court that he had a nineteen-page motion in his possession on this issue that had not yet been filed. The court informed Jarrett that no evidence had been presented that Mr. Potts was not diligently pursuing his case and mounting a defense, but that he would have the opportunity to revisit the issue at another time. The same day, subsequent to the hearing, the circuit court filed an order denying, what it considered to be, Jarrett's oral motion to dismiss Mr. Potts as his counsel.

On June 26, 2006, Jarrett filed a *pro se* motion with the circuit court, entitled "Petition to the Judge, Motion Change of Counsel, Conflict of Interest," which requested the court to dismiss counsel Gary Potts and appoint another counsel or to allow Jarrett to act *pro se* "with another counsel." While the court could not find a copy of the motion in its file on the day of the trial, Jarrett was allowed to verbalize his allegations during a pretrial hearing held in chambers on June 28, 2006. He asserted a lack of visitation by Mr. Potts and stated that Mr. Potts failed to subpoena certain witnesses that Jarrett had requested be present for trial. As Jarrett began to argue to the court that the State had not complied with discovery rules, the court interrupted him and stated that he had not moved to represent himself. While Jarrett disagreed with the court, claiming he had filed such a motion, it is clear from the record that the only motion Jarrett had filed was the June 26 motion and a motion to proceed *in forma pauperis* on appeal,[1] neither of which the court considered as a motion for Jarrett to represent himself. Mr. Potts then questioned Jarrett on the record

---

[1] Jarrett's motion for leave to proceed *in forma pauperis* on appeal was denied by the circuit court on May 12, 2006, as there had been no disposition of the charges to enable Jarrett to file an appeal.

about his plan if the court agreed to dismiss Mr. Potts, to which Jarrett responded, "[a] pro se inmate is not held accountable to the law. The judge has to . . ."

The circuit court did present Jarrett with the opportunity to make a request to proceed *pro se* by specifically asking him if he was then requesting that the court allow him to represent himself. Jarrett responded to the court's inquiry by stating, "[w]ell, you're forcing me to if you won't dismiss him," "you are forcing me to represent myself," and "I guess I'll have to represent myself." When the circuit court determined that it would not dismiss Mr. Potts, Jarrett's final statements to the court were "[y]our Honor, I don't want Mr. Potts as my counsel" and "I'll fire him."

Jarrett now argues that his constitutional right to conduct his own defense was violated by the circuit court refusing to allow him to do so. He urges this court to reverse the circuit court and hold that it abused its discretion in denying his motion to dismiss his defense counsel, thereby not allowing him to continue *pro se* at trial.[2] Finally, he asks us to reverse and dismiss his conviction, or in the alternative, remand the case for a new trial or sentencing.

The State responds that at no point in either Jarrett's oral or written motions, or pretrial discussions with the court, did he make the request to represent himself. The State concedes that Jarrett wanted to fire Mr. Potts and have him dismissed from the case, but maintains that Jarrett never unequivocally requested that he wanted to act as his own attorney at trial.

The United States Supreme Court addressed the federal constitutional right of a criminal defendant to proceed *pro se*. The Court, in *Faretta v. California*, 422 U.S. 806 (1975), held that "in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits [traditionally associated with the right of counsel]." *Id.* at 835. The Court further stated that, although a defendant need not have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he "should be made aware of the dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* (citing *Adams v. United States ex rel. McCann*,

---

[2] While Jarrett notes that the circuit court denied his motion to dismiss his defense counsel, his sole argument developed on appeal is that he had a constitutional right to defend himself *pro se* which was violated when the court did not allow him to do so.

317 U.S. 269 (1942)). In *Faretta*, the Court also concluded that a defendant's technical legal knowledge is not relevant to an assessment of his knowing exercise of the right to defend himself.

This court has long recognized the crucial aspect of informing an accused of his right to represent himself, along with the attendant risks. *See Hatfield v. State*, 346 Ark. 319, 57 S.W.3d 696 (2001). An accused is entitled to represent himself provided that he knowingly and intelligently forgoes his right to counsel and is able and willing to abide by the rules of procedure and courtroom protocol. *See Gilbert v. State*, 282 Ark. 504, 669 S.W.2d 454 (1984) (citing *Faretta v. California, supra*). We have previously held that the circuit court maintains a weighty responsibility in determining whether an accused has knowingly and intelligently waived his right to counsel. *See Gibson v. State*, 298 Ark. 43, 764 S.W.2d 617 (1989). Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights. *See Bledsoe v. State*, 337 Ark. 403, 989 S.W.2d 510 (1999). Determining whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the background, the experience, and the conduct of the accused. *See id.* A specific warning of the dangers and disadvantages of self-representation, or a record showing that the defendant possessed such required knowledge from other sources, is required to establish the validity of a waiver. *See id.*

A criminal defendant may invoke his right to defend himself *pro se* provided that (1) the request to waive the right to counsel is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *See Pierce v. State, supra.* All three factors must be satisfied in order to proceed *pro se*, as each requirement is used in the conjunctive with the word "and." *See id.*

The constitutional right to counsel is a personal right and may be waived at the pretrial stage or at trial. *See id.* However, a request to proceed *pro se* is not an unequivocal request if it is an attempt on the part of the defendant to have another attorney appointed. *See, e.g., Morgan v. State*, 359 Ark. 168, 195 S.W.3d 889 (2004); *Collins v. State*, 338 Ark. 1, 991 S.W.2d 541 (1999). Additionally, it is well settled that the right to counsel is not absolute and may not be used to frustrate the inherent power of the

court to command an orderly, efficient, and effective administration of justice. *See Collins v. State*, 338 Ark. 1, 991 S.W.2d 541 (1999).

In the instant case, neither the request that Jarrett made at the June 12 hearing, nor the request in his *pro se* motion filed on June 26, were requests that he be allowed to represent himself. He simply asked that Mr. Potts "step down so someone [could] represent [him]" and requested the court either dismiss his counsel and appoint another, or allow him to act *pro se* "with another counsel." It is clear that he had not made a request to represent himself. Furthermore, the statements Jarrett made at the pretrial hearing could not have been interpreted as an unequivocal request to proceed *pro se*. While his statements did exemplify his extreme displeasure with Mr. Potts as his counsel, a fact which is undisputed, they did not amount to an unequivocal request to take responsibility, be held accountable, and proceed *pro se*. Because Jarrett did not make such a request, we find no error and affirm.[3]

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Jarrett, and no prejudicial error has been found. *See Winston v. State*, 368 Ark. 105, 243 S.W.3d 304 (2006).

Affirmed.

---

[3] We must point out that, at the conclusion of the pretrial hearing on June 28, 2006, the circuit court did find that Jarrett did not have the sufficient understanding of the rules of procedure and rules of conduct to represent himself. However, our review of the record reveals that Jarrett never made an unequivocal request to represent himself. Nonetheless, this court can always affirm where the circuit court reaches the right result, albeit for the wrong reason. *See Davis v. State*, 367 Ark. 330, 240 S.W.3d 115 (2006).