2012 Ark. 336

**Walter Lee WALTON, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 11–884.**

Supreme Court of Arkansas.

Sept. 20, 2012.

Benca & Benca, Little Rock, by: Patrick J. Benca, for appellant.

Dustin McDaniel, Att'y Gen., by: Kent G. Holt, Ass't Att'y Gen., for appellee.

COURTNEY HUDSON GOODSON, Justice.

A jury in Sebastian County found appellant Walter Lee Walton guilty of first-degree murder, a class Y felony. Pursuant to Arkansas Code Annotated section 5–4–501(d)(1)(A) (Supp.2011), the circuit court sentenced him to a term of life imprisonment without parole.[1] For reversal, appellant contends that he did not know-ingly and intelligently waive his right to counsel. Because appellant was sentenced to life in prison without parole, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(2). We affirm the conviction and sentence.

The record reflects that the prosecuting attorney in Sebastian County charged appellant with first-degree murder in connection with the death of Jeremy Travis. The circuit court held the arraignment on September 15, 2010, and by an order of that date, the court found appellant indigent and appointed a public defender, John Joplin, to represent him. On appellant's behalf, Joplin filed various motions to suppress and to compel, a motion in limine, and a motion challenging the constitutionality of the enhancement provisions of section 5–4–501(d)(1)(A). The circuit court ruled on these issues after a hearing held on April 29, 2011.

On May 10, 2011, the circuit court convened a hearing to address a letter appellant had written on April 30, 2011, informing the court that Joplin no longer represented him and enclosing two pro se motions for filing. Upon inquiry of the court, appellant confirmed that the letter was meant as a request for self-representation. The following discussion ensued:

THE COURT: So, you are telling me now you want to make an oral motion to represent yourself?

APPELLANT: Yes, sir. I'd like to add, the letter sounds like I have a problem with Mr. Joplin. I don't. I don't have a problem with his representation. I think he's been very diligent in trying to represent me on this case and spent a lot of time and been aware of the details

---

1. Section 5–4–501(d)(1)(A) provides that a defendant who is convicted of a class Y felony involving violence and who has been convicted of two or more felonies involving violence shall be sentenced to a term of not less than life imprisonment. Appellant had previous convictions of first-degree battery and second-degree murder.

and on top of it. I'm not—my decision to represent myself in no way has anything to do with Mr. Joplin.

THE COURT: Has he shared with you the old saw that lawyers have about lawyers representing themselves?

APPELLANT: Yeah. John Wesley Hall in his book, *Trial Handbook for Arkansas Lawyers,* he who represents himself has a fool for a lawyer.

THE COURT: Client. A lawyer who represents themself has a fool for a client. Not a lawyer. The lawyer is not the fool on that issue.

APPELLANT: Right. And I'm also aware that during opening statements and closing arguments, I can't say anything except what is coming into evidence or what has been brought into evidence. I can't testify. I can only comment on the evidence.

THE COURT: Well, that is a slippery slope. Your comments on the evidence may get you put under oath or may get you subject to cross-examination.... Well, Mr. Walton, you have gone a good ways down this road with good, competent counsel. You don't have any problem with him. Now you get to the edge of the cliff and you want to jump off by yourself. I'm having a hard time. Do you understand that you will be held to the same standard of accountability with regard to knowledge of the court rules, rules of evidence, and other protocol in court as Mr. Joplin would, or as John Wesley Hall would?

APPELLANT: Yes, sir. I'd like to add that I've represented myself before in federal court to a successful conclusion of the case. I'm aware of court etiquette, rules of evidence, rules of criminal procedure. In that case there, in no way did my self-representation hold up the court or in any way cause any bumps.

THE COURT: Would you like Mr. Joplin to be whispering counsel or assist you in this?

APPELLANT: Well, yes, I would like stand-by counsel. There's certain things that I cannot do. I cannot talk to witnesses. I cannot go to the prosecutor and get like transcripts of statements. I cannot—and then of course if there—at some point during the trial, if the Court feels that I'm not able to represent myself, then I feel that it would be better if stand-by counsel be there to take over if the Court decides that that's necessary.

. . . .

THE COURT: . . . If you are your own counsel, you give up some very valuable resource here. And I can't make Mr. Joplin your servant for discovery purposes and out-of-court matters. My impression of stand-by counsel is in-court reference point and help in connection with the litigation itself. Now, I can't tell him to—I just—I don't tell any lawyer at all what to do for their client. But as stand-by counsel, he will be in court and available to you for inquiry for procedural matters and issues such as that. He is not—if I release him as your lawyer, he's released as your lawyer other than for trial purposes.

At this juncture, appellant inquired how he might view the DVD recordings of witness statements that the prosecuting attorney had produced in discovery. The circuit court stated that it would have someone look into whether the detention center had a DVD player for appellant to use. After further discussion of pretrial matters, the circuit court stated:

THE COURT: So, you're aware of all the risks attendant, some of which we have talked about here today. It won't be convenient. You know you don't have a law library. Mr. Joplin is not

your law clerk. He won't be running back and forth doing your briefs for you. And you're going to be on your own, except during the trial of this case, I'm going to ask Mr. Joplin to be there to advise you with regard to any question you may have with regard to procedure or trial courtroom protocol.

APPELLANT: Yes, sir.

Following this discussion, the circuit court granted appellant's oral motion to represent himself in the proceedings.

On May 24, 2011, the circuit court held a hearing to address several motions appellant had filed, one of which dealt with issuing subpoenas to out-of-state witnesses. On this subject, the following transpired:

THE COURT: I think this is one of the very things that I was concerned about when we had a hearing in which you were asking to represent yourself. I granted that with the caveat that you're somewhat limited in your ability to get around. You get out of the detention center when I asked you to be brought over here and that's about the only reason you get out of there. In order to get some witnesses from out of state, there's quite a little process that has to be followed. And I don't know if—what your thought is on that.

APPELLANT: You Honor, I have an example of—it's a blank subpoena form here that it pretty much sets out what a subpoena is except it has the name, address, and such blank. I was wondering if I could possibly use something like this.

THE COURT: For anybody that's subject to the jurisdiction of this Court, Mr. Walton, you certainly can do that.

APPELLANT: Yes, sir.

THE COURT: I'm not going to—sitting here telling you how to do this. I'm telling you that there are procedures that you have to go through in order to secure the presence of a witness in Oklahoma, for example, which you set out here to get them compelled to come to Arkansas. It's not my portion to tell you how to do that. But I just want— I'm thinking you don't know what it takes to get that done. And I'm telling you that you won't get that done sitting in the Sebastian County Adult Detention Center because it requires some things that you can't get done from there....

The circuit court also addressed appellant's request for access to a private telephone so that he could interview witnesses. The court responded that it would not require the sheriff to provide a phone for appellant's personal use, whereupon the following exchange occurred:

THE COURT: That's just one of the risks you run when you're trying to represent yourself while you're in custody. And I guess I'll give you—ask you this for the record. Once again, having been made aware of this by me one time and now, one time prior and one time now, do you really think it's a good idea for you to represent yourself? Do you want Mr. Joplin to represent you in this matter?

APPELLANT: I think I should represent myself, Your Honor.

THE COURT: Knowing all the limitations that you face, knowing the problems that are there, knowing that they don't supply a law library, you are not going to have access to out-of-state courts from the detention center, you will be held to the same standard of accountability as any lawyer that would walk in here, and if you—whatever result comes about, that will be your doing basically. So you will be charged with your own case with—subject to all the limitations that I have tried to explain to

you. The only thing Mr. Joplin is going to have to do is aid and assist you during the presentation of your case in court.

APPELLANT: Your Honor, I understand being an untrained lawyer, not being familiar with the rules as somebody that has been doing if for years, there will be points in the trial where I probably should object and won't—don't, and things get by that I don't hold—don't preserve for appeal because I didn't object at the right time. But one thing that can't be changed in this case is the evidence, the witnesses, and what happened. And I feel that I'm the best person available to me to bring that evidence into the courtroom.

THE COURT: Well, you've just told me that you're aware of some additional problems that I didn't even bring up a few minutes ago in my comments, about objections and failure to timely object. It will be considered that you waived those potential for objections and those have to be raised contemporaneously, hearsay or whatever. If you miss it, that's what the record will be.

APPELLANT: I understand, Your Honor.

THE COURT: All right, then.

Our further review of the record reflects that appellant filed a number of pretrial motions, including his own motion challenging the enhancement of his sentence with prior convictions. At trial, the testimony revealed that appellant confronted Travis about having an affair with appellant's paramour. During the encounter, appellant struck Travis in the head with a metal weight bar, chased him down a street, and inflicted two fatal stab wounds. Appellant's trial strategy was that he committed manslaughter, not murder, contending that he acted under the influence of extreme emotional disturbance for which there was a reasonable excuse.[2] In that effort, appellant conducted voir dire, made his own opening and closing statements, cross-examined witnesses, raised objections, moved twice for a mistrial, argued in favor of a directed verdict, and proffered a requested jury instruction. On occasion, Joplin assisted appellant in advancing arguments to the court.

Appellant's sole argument on appeal is that he did not knowingly and intelligently waive his right to counsel because the circuit court failed to adequately warn him about the dangers and disadvantages of self-representation. Our review of this issue is governed by the following standards. The Sixth Amendment to the United States Constitution, made obligatory upon the states by the Due Process Clause of the Fourteenth Amendment, guarantees an accused the right to have the assistance of counsel for his defense. *Oliver v. State*, 323 Ark. 743, 918 S.W.2d 690 (1996) (citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). The constitutional right to counsel is a personal right and may be waived at the pretrial stage or at trial. *Mayo v. State*, 336 Ark. 275, 984 S.W.2d 801 (1999). A criminal defendant has a right to represent himself at trial where his waiver of the right is knowingly and intelligently made. *Faretta, supra.* A defendant in a criminal case may invoke his right to defend himself pro se provided that (1) the request to waive the right to counsel is unequivocal and timely asserted; (2) there has been a knowing and intelligent waiver; and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *Philyaw v. State*, 288 Ark. 237, 704 S.W.2d 608 (1986), overruled on other grounds by *Oliver, supra.* The constitutional mini-

---

**2.** *See* Arkansas Code Annotated section 5–10–104(a)(1)(A) (Supp.2011).

mum for a knowing and intelligent waiver of the right to counsel requires that the accused be made sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forego the aid of counsel. *Daniels v. State,* 322 Ark. 367, 908 S.W.2d 638 (1995). The accused must "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).

We have previously held that the circuit court maintains a weighty responsibility in determining whether an accused has knowingly and intelligently waived his right to counsel. *Jarrett v. State,* 371 Ark. 100, 263 S.W.3d 538 (2007). Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights, and the burden is upon the State to show that an accused voluntarily and intelligently waived his fundamental right to the assistance of counsel. *Hatfield v. State,* 346 Ark. 319, 57 S.W.3d 696 (2001). Determining whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the background, the experience, and the conduct of the accused. *Collins v. State,* 338 Ark. 1, 991 S.W.2d 541 (1999). A specific warning of the danger and disadvantages of self-representation, or a record showing that the defendant possessed such required knowledge from other sources, is required to establish the validity of the waiver. *See Scott v. State,* 298 Ark. 214, 766 S.W.2d 428 (1989).

Here, appellant asserts that the deficiencies we observed in *Bledsoe v. State,* 337 Ark. 403, 989 S.W.2d 510 (1999), are equally present in this case and require reversal of his conviction. For instance, appellant points out that the circuit court did not advise him of the range of penalties, did not explicitly inform him that he had the right to counsel, and did not inquire as to his ability to afford an attorney. In *Bledsoe,* the circuit court merely advised Bledsoe that he was expected to follow court rules and procedure, but the court offered no warnings at all about the substantive risks of failing to comply with the rules. Beyond that critical failing, we also noted that the circuit court did not inform Bledsoe of the range of penalties he faced. Additionally, the court did not advise Bledsoe of his right to counsel, and no inquiry was made as to his ability to afford an attorney. Given the overall circumstances, we could not conclude that Bledsoe's waiver of the right to counsel was knowingly and intelligently made.

The facts in the present case stand in stark contrast to those in *Bledsoe.* Here, the circuit court pointedly advised appellant of the drawbacks of self-representation. The court informed appellant that he would be held to the same standards as an attorney and would be required to follow court rules and protocol. The circuit court also warned appellant that his remarks could be construed as testimony that would subject him to cross-examination. The court discussed with appellant the consequences of failing to preserve issues for review, a concept with which appellant was already familiar. The circuit court also warned appellant about the difficulties associated with preparing for trial while in custody. When appellant experienced problems in that regard, the court implored appellant to reconsider his decision, to no avail. Further, the record shows that the circuit court appointed a public defender after ascertaining that appellant did not have the means to hire an attorney. The record also establishes that appellant

had experience in the criminal justice system, given his prior convictions, and appellant informed the court that he had successfully represented himself in federal court. Moreover, the record shows that appellant was cognizant of the range of punishment, inasmuch as he challenged the constitutionality of the enhancement provisions of section 5–4–509(d)(1)(A). On this record, we are satisfied that appellant made his decision with open eyes, choosing to forego the right to counsel with full awareness of the dangers and pitfalls associated with self-representation.

The record in this case has been reviewed for reversible error pursuant to Arkansas Supreme Court Rule 4–3(i), and none has been found.

Affirmed.