SLIP OPINION

Cite as 2014 Ark. App. 84

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-12-1115

| | |
|---|---|
| WALTER ALLEN BROOKS<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** February 12, 2014<br><br>APPEAL FROM THE ST. FRANCIS COUNTY CIRCUIT COURT<br>[NO. CR–2010-302]<br><br>HONORABLE RICHARD L. PROCTOR, JUDGE<br><br>REVERSED AND REMANDED |

## JOHN MAUZY PITTMAN, Judge

Appellant was charged with capital murder in the death of Anna Mae Banks and the attempted capital murder of Nathaniel Banks. After a jury trial, he was convicted of the lesser-included offenses of first-degree murder and attempted first-degree murder, and was sentenced to consecutive terms of imprisonment of eighty and fifty years. For reversal, he argues that the trial court erred in denying his motions for directed verdict; in refusing to instruct the jury to determine whether several witnesses were accomplices to the crimes; in permitting the State to present evidence of other bad acts; in denying his motion for a mistrial after State witnesses repeatedly volunteered testimony regarding evidence not provided to appellant in discovery; and in refusing to instruct the jury on second-degree murder and attempted second-degree murder as lesser-included offenses. We reverse and remand.

Tammy Bernard testified that she lived in Widener, Arkansas, in 2010, and that Nathaniel Britt had been her boyfriend from 2006 until February 2010, when she started dating appellant. Britt was the son of victims Nathaniel and Anna Mae Banks, who also lived in Widener and very close to the residence that Tammy Bernard shared with her sister. Tammy Bernard testified that she could get to the Bankses' house by simply cutting through her yard. She also testified that, despite their breakup, Britt maintained a friendly relationship with her sister and was visiting her sister at the Bernard home on June 16, 2010.

Nathaniel Britt testified that he was visiting Tammy's sister on that date and was confronted by appellant, with whom he had a troubling encounter. The next day, June 17, 2010, Britt called Tammy and asked her "what was wrong with her boyfriend," which led to an argument with her. Britt testified that, later that day, while he was en route to Forrest City to get work supplies, appellant telephoned him and asked him where he was. Britt replied that he was at work and would not be home for several hours. Britt testified that appellant responded by saying, "I'll be there when you get off."

Britt's father, Nathaniel Banks, testified that he and his wife, Anna Mae, lived in Widener on June 17, 2010, and that they returned to their house that morning after going to town for hog feed. Mr. Banks stated that he and Anna Mae were facing one another, unloading the bags of feed in their carport, when he heard a noise and saw her fall to the ground bleeding. Looking around, he saw a man slightly shorter than him standing behind him. Mr. Banks stated that when he turned to the man:

> [The man] put the pistol in my face and pulled the trigger and it snapped. It didn't go off. He then rejected [sic] it and put it back up there and it snapped again. He

2

ran, 'cause I dropped the bag and I stumbled over the bag and when I got back to my feet, he was standing in the road. I had never seen him before in my life. I started to go out there after him and he rejected [sic] the gun, aimed it toward me and snapped again. Then he took off up the highway.

Mrs. Banks was killed instantly. Mr. Banks called 911 but was unable to identify the shooter other than to say he was wearing a "do-rag," sunglasses, a cap, and dark-colored pants. A passerby then approached Mr. Banks and identified the automobile in which he saw the alleged killer traveling. This description prompted an investigation that quickly resulted in the apprehension of appellant and three other men in a vehicle traveling from Widener to Hughes, Arkansas.

All of the occupants of the automobile were somehow related. Earl Smith, the driver, had children by one of appellant's sisters; Kipp Doolittle cohabited with another of appellant's sisters and had a child by her; and Robert Brooks was appellant's brother. Both Smith and Doolittle testified at trial. Both said that appellant had paid them to go to Widener with him.

Smith testified that he understood that the purpose of the trip was to allow appellant to pick up some clothes from his girlfriend's house. Doolittle testified that he believed that he was being paid to help appellant's girlfriend move. Although they both denied any foreknowledge that the purpose of the trip was to commit a murder, Smith testified that, once in Widener, appellant made a telephone call from his girlfriend's yard, told Smith that it would be a few hours before the recipient of the call would arrive, and said that he was "going to walk over to [where] the guy's momma and daddy stayed across the street." Smith stated that appellant then got into the back seat of the car, saying that he was cleaning his

bullets so that no evidence would be left, and then walked to the Bankses' house. Smith heard a gunshot, and when appellant returned he told Smith that he (appellant) had "execute-styled the woman and tried to kill the man" but that his gun jammed.

Doolittle testified to the same effect, stating that he did not know that appellant had a gun until he began to clean his shell casings. He also testified that, on the day of the shooting, appellant was wearing a black tank top, black pants, a do-rag, a stocking cap, and sunglasses, and that appellant threw the sunglasses out of the car window while they were returning home from Widener.

Appellant was not wearing all of those items when the men were apprehended. The cap, do-rag, and gloves were found in Smith's car, and the sunglasses were found along the highway. A semiautomatic pistol and ammunition were also found in Smith's car. Forensic tests indicated that this pistol had fired an ejected shell casing found at the murder scene. Police investigators took a DNA sample from appellant, but not from the other men, because they had determined that appellant was the suspect. Male DNA samples were obtained from the gloves and do-rag found in the car, but DNA profiling excluded appellant as a contributor to the DNA profile obtained from those items.

We now turn to appellant's arguments. Appellant's sufficiency argument is not preserved for appeal. He asserts that he was convicted based on the uncorroborated testimony of accomplices, but the witnesses to whom he refers—Smith and Doolittle—were never declared to be accomplices by the court or found to be accomplices by the jury. A person must first be found to be an accomplice for the requirement of corroborative

SLIP OPINION

evidence set out in Ark. Code Ann. § 16-89-111(e)(A)(1) (Repl. 2013) to be applicable. *Price v. State*, 365 Ark. 25, 223 S.W.3d 817 (2006); *Rockett v. State*, 319 Ark. 335, 891 S.W.2d 366 (1995). Because no accomplice instruction was submitted to the jury, and because appellant never requested that the trial court hold the witnesses to be accomplices as a matter of law, accomplice status was never determined, and we are therefore unable to reach the merits of appellant's sufficiency argument.

We do, however, agree with appellant's argument that the trial court erred by refusing appellant's request to submit the issue of accomplice status to the jury. The significance of this issue was explained in *Meadows v. State*, 2012 Ark. 57, at 6–7, 386 S.W.3d 470, 475:

> When accomplice testimony is considered in reaching a verdict, Arkansas law provides that a person cannot be convicted based on the testimony of an accomplice "unless corroborated by other evidence tending to connect the defendant . . . with the commission of the offense." Ark. Code Ann. § 16-89-111(e)(1)(A) (Repl. 2005). Corroboration must be evidence of a substantive nature, since it must be directed toward proving the connection of the accused with the crime, and not directed toward corroborating the accomplice's testimony. *Camp v. State*, [2011 Ark. 155, 381 S.W.3d 11]. Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. *Id.* Rather, it need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime. *MacKool v. State*, 365 Ark. 416, 231 S.W.3d 676 (2006). The test for corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the remaining evidence independently establishes the crime and tends to connect the accused with its commission. *Id.* The presence of an accused in the proximity of a crime, opportunity, and association with a person involved in a crime in a manner suggestive of joint participation, are relevant factors in determining the connection of an accomplice with the crime. *Parker v. State*, 355 Ark. 639, 144 S.W.3d 270 (2004) (quoting *Andrews v. State*, 344 Ark. 606, 613–14, 42 S.W.3d 484, 489 (2001)). When two or more persons assist each other in the commission of a crime, each is an accomplice and criminally liable, ultimately, for his own conduct, but he cannot disclaim responsibility because he did not personally take part in every act that went to make up the crime as a whole. *Id.*

Given the evidence that the shooting may have been prompted by revenge, the familial relations of the witnesses to appellant, and the conflicting explanations for the trip given by the witnesses, the jury could properly have found that witnesses Smith and Doolittle knew the real purpose of the trip from its inception and were intentionally assisting appellant in the commission of the crimes. Consequently, we hold that the trial court erred in refusing to give the proffered accomplice instruction, and we reverse and remand for retrial.

We do not address the remaining issues because they are unlikely to recur on retrial. In particular, we decline to address the issue concerning the propriety of the lesser-included-offense instructions on this record. The witnesses had much to say regarding appellant's expressed intent, but the weight and character of their testimony will likely be significantly different after the jury determines whether these witnesses were accomplices to the crime.

Reversed and remanded.

WALMSLEY and HIXSON, JJ., agree.

*Janice W. Vaughn*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Jake H. Jones*, Ass't Att'y Gen., for appellee.