Cite as 2019 Ark. 308

# SUPREME COURT OF ARKANSAS

**No.** CR–18–87

|  |  |
|---|---|
| QA'TONIOUS LEE SIRKANEO<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** October 31, 2019<br><br>APPEAL FROM THE ST. FRANCIS COUNTY CIRCUIT COURT [NO. 62CR-10-302]<br><br>HONORABLE RICHARD L. PROCTOR, JUDGE<br><br>AFFIRMED. |

**RHONDA K. WOOD, Associate Justice**

Qa'Tonious Lee Sirkaneo[1] contends that the circuit abused its discretion when it failed to order a mistrial after a witness testified regarding his right to remain silent. The circuit court did not abuse its discretion. We affirm.

## I.  *Procedural History*

Sirkaneo was charged with capital murder in the death of Anna Mae Banks and attempted capital murder of Nathaniel Banks. In his first trial, a jury convicted him of first-degree murder and attempted first-degree murder. He was sentenced to consecutive terms of eighty and fifty years' imprisonment. The Arkansas Court of Appeals reversed and remanded for a new trial in *Brooks v. State*, 2014 Ark. App. 84.

In his second jury trial, Sirkaneo represented himself. This jury convicted him of first-degree murder, attempted first-degree murder, and a firearm enhancement. He was

---

[1]Mr. Sirkaneo also goes by the alias Walter Allen Brooks.

sentenced as a habitual offender to life imprisonment for first-degree murder, thirty years' imprisonment for attempted first-degree murder, and fifteen years' imprisonment on a firearm enhancement, all to run consecutively. The sole issue on appeal is whether the circuit court erred in denying Sirkaneo's mistrial motion.[2]

## II. *Detective Ramsey's Cross-Examination*

Sirkaneo alleges that constitutional error occurred during his cross-examination of Detective Ramsey. Specifically, Sirkaneo questioned Ramsey's rationale for ruling out three other suspects in the murder. Ramsey stated that these suspects were excluded on the basis of investigative information. When Sirkaneo prodded further into the source of this information, Ramsey explained that two of the other suspects made statements to the police, exonerating themselves. Ramsey then stated, "But I'm telling you that you had the same opportunity to give a statement. You, you signed your Miranda Rights away and had the opportunity to give your statement. But declined to."

Sirkaneo immediately requested a bench conference. He argued that Ramsey's statement was improper and should not have occurred. In ruling on his objection, the court stated, "Well, whatever the object[ion] is, I'm going to overrule it."

## III. *Standard of Review*

Mistrial is a drastic remedy that should be granted only when the error is so prejudicial that justice cannot be served by continuing the trial, or where the fundamental fairness of the trial has been manifestly affected. *Bell v. State*, 334 Ark. 285, 303, 973 S.W.2d

---

[2]The present case does not involve any factual issues regarding the crimes. The events are set out in detail within *Brooks v. State*, 2014 Ark. App. 84.

806, 816 (1998). The circuit court enjoys broad discretion in ruling on a mistrial motion. *Id*. We will not reverse a ruling denying a mistrial motion absent an abuse of discretion. *E.g.*, *Sylvester v. State*, 2016 Ark. 136, at 8, 489 S.W.3d 146, 151. To determine whether abuse occurred, we consider whether the prosecutor deliberately induced a prejudicial response, and whether an admonition to the jury could have cured any resulting prejudice. *Id*.

IV. *Analysis*

Prior to determining if a mistrial is warranted, we must consider whether an error occurred. The Fifth Amendment prohibits the prosecution from commenting on the accused's silence. *See Griffin v. California*, 380 U.S. 609, 615 (1965). Although *Miranda* warnings do not expressly assure there is no penalty for invoking silence, such assurance is implicit to all who receive the warning. *Doyle v. Ohio*, 426 U.S. 610, 618, (1976). Accordingly, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id*. In contrast, "when a comment on a defendant's post-arrest silence is not an attempt to impeach the defendant, it is not the type of comment prohibited by the Court in *Doyle*." *E.g.*, *Sylvester v. State*, 2016 Ark. 136, at 11, 489 S.W.3d 146, 152–53; *Robinson v. State*, 348 Ark. 280, 290, 72 S.W.3d 827, 833 (2002).

Here, Sirkaneo's silence was not used to impeach his trial testimony. In fact, Sirkaneo was not testifying; he was conducting Detective Ramsey's cross-examination. Thus, unlike *Doyle*, the prosecutor here did not call attention to Sirkaneo's silence. Rather, it was Sirkaneo's own line of questioning that led to Ramsey's unanticipated response. This was

3

not a *Doyle* violation. *Sylvester*, 2016 Ark. 136, at 11, 489 S.W.3d at 152–53 (holding that although the witness's comment—regarding the defendant's request for a lawyer—was unresponsive, it was not an attempt to impeach the defendant and therefore not prohibited under *Doyle*).

We also note that the circuit court issued the following general jury instruction at the end of the trial:

> [THE COURT]:     A defendant has an absolute constitutional right not to testify. The fact that defendant does not testify is not evidence of guilt or innocence and under no circumstances shall be considered by you in arriving at your verdict.

The circuit court did not abuse its discretion in overruling the objection to the testimony. As there was no error, there was no reason to declare a mistrial. Accordingly, we affirm Sirkaneo's convictions.

## V. *Rule 4-3(i)*

In compliance with Arkansas Supreme Court Rule 4-3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant.[3] No adverse ruling involved prejudicial error.

Affirmed.

BAKER, J., concurs without written opinion.

HART and WYNNE, JJ., dissent.

---

[3]The dissent addresses the circuit court's decision to grant Sirkaneo's motion to represent himself at trial. This issue was not raised on appeal. A defendant has a fundamental right to represent himself. Ark. Const. art. 2, § 10. It would be a slippery slope for this court to expand our review under Rule 4-3(i) to rulings that the defense requested.

4

**ROBIN F. WYNNE, Justice, dissenting.** Pursuant to Arkansas Supreme Court Rule 4-3(i) (2019), I have reviewed the record and concluded that the trial court's determination that appellant's waiver of counsel was knowingly and intelligently made is clearly against the preponderance of the evidence. Accordingly, I would reverse and remand for a new trial.

Because appellant received a sentence of life imprisonment, this court is required by Rule 4-3(i) of the Rules of the Supreme Court to "review all errors prejudicial to the appellant in accordance with Ark. Code Ann. Sec. 16-91-113(a)." Section 16-91-113(a) (Repl. 2016) provides as follows: "The Supreme Court need only review those matters briefed and argued by the appellant, except that where either a sentence for life imprisonment or death has been imposed the Supreme Court shall review all errors prejudicial to the rights of the appellant." Here, it was an "error[] prejudicial to the rights of the appellant" to rule that appellant could waive the right to counsel—a fundamental constitutional right—when that waiver was not made knowingly and intelligently. We have a clear ruling by the trial court on this issue, and the ruling was adverse to appellant's interests. Accordingly, this issue is squarely before this court pursuant to our duty under Rule 4-3(i).[1]

---

[1]The majority's statement that "[i]t would be a slippery slope for this court to expand our review under Rule 4-3(i) to rulings that the defense requested" is belied by its own statement of compliance with the rule. The majority states that "the record has been examined for all objections, motions, and *requests made by either party* that were decided adversely to appellant. No adverse ruling involved prejudicial error." (Emphasis added.) In this case, the decision to permit an invalid waiver of a fundamental constitutional right was an "adverse ruling" because it was prejudicial to appellant.

A defendant's waiver of counsel in a criminal proceeding concerns two competing constitutional rights: the right to counsel[2] and the right to proceed without counsel when the decision is made voluntarily and intelligently.[3] A defendant in a criminal case may invoke his right to defend himself pro se provided that (1) the request to waive the right to counsel is unequivocal and timely asserted; (2) there has been a knowing and intelligent waiver; and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *Walton v. State*, 2012 Ark. 336, at 7, 423 S.W.3d 56, 60. This court has written:

> The constitutional minimum for a knowing and intelligent waiver of the right to counsel requires that the accused be made sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forego the aid of counsel. The accused must "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' "

> We have previously held that the circuit court maintains a weighty responsibility in determining whether an accused has knowingly and intelligently waived his right to counsel. Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights, and the burden is upon the State to show that an accused voluntarily and intelligently waived his fundamental right to the assistance of counsel.

> Determining whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the background, the experience, and the conduct of the accused. A specific warning of the danger and disadvantages of self-representation, or a record

---

[2]The Sixth Amendment to the United States Constitution, made obligatory upon the states by the Due Process Clause of the Fourteenth Amendment, guarantees an accused the right to have the assistance of counsel for his defense. *Walton v. State*, 2012 Ark. 336, at 7, 423 S.W.3d 56, 60.

[3]In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court of the United States recognized the constitutional right of a criminal defendant to conduct his own defense.

showing that the defendant possessed such required knowledge from other sources, is required to establish the validity of the waiver.

*Walton*, 2012 Ark. 336, at 7–8, 423 S.W.3d at 60–61 (internal citations omitted). Our standard of review is whether the circuit court's finding that the waiver of rights was knowingly and intelligently made was clearly against the preponderance of the evidence. *Pierce v. State*, 362 Ark. 491, 209 S.W.3d 364 (2005).

In the present case, on the morning of the first day of trial, defense counsel informed the court that appellant wished to represent himself at trial. After responding several times, "I *can* do it myself," appellant then responded in the affirmative to the question "[D]o you *want* to represent yourself?" (Emphasis added.) Defense counsel directed the court's attention to a case with which he had recently been involved, *Whitlow v. State*, 2016 Ark. App. 510, 506 S.W.3d 272. In *Whitlow*, the trial court refused to allow the defendant to represent himself at trial. The court of appeals acknowledged that the trial court incorrectly based much of its inquiry on the defendant's knowledge of the legal system and his level of education but nonetheless affirmed because his request to proceed pro se was not unequivocal. After some discussion by defense counsel and the prosecution regarding the "competence" to represent oneself at trial not turning on the defendant's technical legal knowledge or education, the court began its inquiry with appellant as follows:

| THE COURT: | Alright. Mr. Brooks, I, I heard the argument while ago that you've already been convicted of one felony and then you've got this felony that's hanging over you right now. |
| --- | --- |
| | That there are some very serious consequences, should there be a conviction in this case. And Mr. Davis is quite a competent lawyer. One of the best lawyers that's able to come before me. |

7

|  | Do you understand that it's to [sic] a real good idea for you to represent yourself in this matter? |
| --- | --- |
| . . . . | |
| DEFENDANT BROOKS/SIRKANEO: | Yes, I understand that. |
| THE COURT: | Okay. |
| DEFENDANT BROOKS/SIRKANEO: | Why you think so? |
| THE COURT: | Do what? |
| DEFENDANT BROOKS/SIRKANEO: | Why you think it ain't a good idea for me to represent myself? |
| THE COURT: | Well, I wouldn't want to go into surgery and have somebody that's never been in the operating room or gone to medical school do it, you know. It's just not a good idea. |
|  | There's a lot of pitfalls, a lot of things that you may not know about that Mr. Davis is trained in. |
|  | And so that's why I say it's not a real good idea. I'm not real concerned about you acting up, because I've never seen you, in, in my court, acting up. You've been very respectful. And I expect that that will continue, because you know if it's not, and you do get out of hand or lose your temper or something like that, there can be some serious consequences to that. And I assume that you'd agree not to do that. |
| DEFENDANT BROOKS/SIRKANEO: | (Non-verbal response) |
| THE COURT: | You're, you're nodding, but I can't, we need to put it on the record. Do you understand that, don't you? |
| DEFENDANT BROOKS/SIRKANEO: | Yeah, I understand. |
| THE COURT: | Okay. But do you understand that there are many - - do, do you know the rules of, of criminal procedure? Have you read them? |
| DEFENDANT BROOKS/SIRKANEO: | I understand it. |

8

| | |
|---|---|
| THE COURT: | No, have you read the rules of criminal procedure? |
| DEFENDANT BROOKS/SIRKANEO: | As to what? |
| THE COURT: | As to the proper, the conduct of a trial. The admissibility - - have you read any of the rules about the admissibility or non-admissibility of any, any evidence? Have you read those? |
| DEFENDANT BROOKS/SIRKANEO: | Naw, no, sir. |
| THE COURT: | Okay. So you want to come into trial and say "I've never read the rules of criminal procedure and I've never read the rules of evidence and yet I want to defend myself." |
| | Do you think you're competent to do that? |
| DEFENDANT BROOKS/SIRKANEO: | Yes, sir. |
| THE COURT: | Why? |
| DEFENDANT BROOKS/SIRKANEO: | Well, because pretty much what I done already studied about this case and what I done studied about the law. |
| THE COURT: | What have you studied about the law. |
| DEFENDANT BROOKS/SIRKANEO: | I know, I know about the elements that the prosecutor has got to prove for upon which what he charged me with. |
| THE COURT: | What are they? |
| DEFENDANT BROOKS/SIRKANEO: | He, he charged me with taking a person a life under it being a circumstance manifesting indifference to the value of human life, according to what the paperwork said. Or he purposefully charged me, you know what I'm saying? |
| THE COURT: | Okay. |
| DEFENDANT BROOKS/SIRKANEO: | Which is a element of the crime. |
| THE COURT: | Um-hum. |
| DEFENDANT BROOKS/SIRKANEO: | So were there any evidence that he present to the Court need to prove that element beyond a reasonable a doubt, I know that much. |

9

| | |
|---|---|
| THE COURT: | Okay. |
| DEFENDANT BROOKS/SIRKANEO: | Okay. I ain't seen that, I ain't seen not attended circumstances or nothing. But whatever evidence he got, whatever he going to present to the jury. I mean whatever he argue, I know what to do. |
| THE COURT: | Do you understand that if you, if I decided to let you represent yourself today, that you're going in today just like it is, with what you know. |
| DEFENDANT BROOKS/SIRKANEO: | Okay. |

[Discussion regarding discovery.]

| | |
|---|---|
| THE COURT: | Alright, do you understand that if I let you represent yourself we're going to trial in just a, just a few minutes? |
| DEFENDANT BROOKS/SIRKANEO: | Um-hum. |
| MR. DAVIS: | Judge, I will say, I have a trial notebook that I've prepared and have prepared from day one. I also have gone through the twenty (20), well, I have nineteen (19) volumes, nineteen (19) volumes working of the previous trial and I copied all the testimony, the cross examination and and [sic] direct testimony and my notes and highlights and points that I need to make on it. That's the only thing that he, that is different than what he would have had initially. |
| THE COURT: | Well, Mr. Davis, if I do grant the motion, you understand that you're not going to get to go back to Little Rock? |

[Discussion regarding Mr. Davis acting as stand-by counsel.]

| | |
|---|---|
| THE COURT: | Let me ask the defendant another question. Do you know what the first thing that we do is, in the trial? |
| DEFENDANT BROOKS/SIRKANEO: | No, I don't? |
| THE COURT: | Okay, have you ever been through, yourself, a jury selection? |

| | |
|---|---|
| DEFENDANT BROOKS/SIRKANEO: | Yes, I have. |
| THE COURT: | Yourself? You conducted it? |
| DEFENDANT BROOKS/SIRKANEO: | No. |
| THE COURT: | Okay. Have you ever given argument to a jury? |
| DEFENDANT BROOKS/SIRKANEO: | No, I haven't, but I can. |
| THE COURT: | I've no doubt that you can. Do you know that Mr. Davis will be a standby - - do you know what a stand-by counsel is? |
| DEFENDANT BROOKS/SIRKANEO: | There to assist me. |
| THE COURT: | Well, he, he can't be your lawyer now. He's just standing by in case you need to ask - - he's to going to stand up and make an objection. He's not going to tell you "what the rules - - say this."

Now you'll have to consult with him. And don't you think that puts you under a great disadvantage? |
| DEFENDANT BROOKS/SIRKANEO: | Not really. |
| THE COURT: | Why? |
| DEFENDANT BROOKS/SIRKANEO: | Well, this is what I'm looking at, when I first met Mr. Davis, I explained to Mr. Davis about my constitutional rights being violated. I'm aware that they are being violated. Because from what I see from that record right there in that Discovery. I ain't seen no probable cause for my arrest or nothing.

Nothing in the record right there says that I should have been arrested, period. |
| THE COURT: | Um-hum. |
| DEFENDANT BROOKS/SIRKANEO: | Even the officer that fabricated somebody told him that I was the shooter, came back and said that he can't even identify, they don't even have no race, gender, or nothing.

So where's my opportunity to confront my accuser? That never happen in the first trial. |

11

|  | The State said that it can't produce my accuser. So why am I study going to trial. |
|  | I think the jury would want to know the answer to that to [sic]. |
| MR. DAVIS: | Now I had, went through great pains to explain to Mr. Sirkaneo that if the Court, the State files a felony information we don't have a grand jury system. And – – – |
| DEFENDANT BROOKS/SIRKANEO: | I understand that. |
| MR. DAVIS: | – – –that's sufficient to go forward in and of itself, and the State has an opportunity to present its case. Only if he'd given a statement on a warrant that they didn't have probable cause, would that statement be suppressed. And that's not an issue in this case. |

But I don't want to go back and kinda justify everything that I've told him. But I just could not let that stand on the record. Probable cause is not an issue at this point. A felony information has been filed, by the State.

At any rate, Judge, and, and the Court is going down the lines of questioning him and that's your, that's your job to do. But in so far as whether he's competent or what, again, I would suggest to the Court that the competence that the Supreme Court talks about is one of, that is not tied in any way to the ability to know anything about the law and how to try a case.

It's more or less talking about the kind of competence that Mr. Long suggested, whether or not he is, is kinda fit to go forward. But in addition to that, whether or not he'll be disruptive in the administration of justice. And I don't think that that's the case. And so we're asking for a ruling one way or the other on what the Court's decision is about him representing himself.

. . . .

12

**RULING OF THE COURT**:

THE COURT: Alright. The Court is going to rule that Mr. Sirkaneo, Mr. Brooks, will be able to represent himself, but Mr. Davis will be there as stand-by counsel.

And from the questioning I've given, I think he's made it pretty clear that [he] meets the standard to represent himself.

While each case turns on its own facts, our case law provides some guidance as to what constitutes a knowing and intelligent waiver. For example, in *Bledsoe v. State*, 337 Ark. 403, 989 S.W.2d 510 (1999), this court held that the defendant did not knowingly and intelligently waive his right to counsel:

> The record does not reflect that the trial court advised Mr. Bledsoe of the dangers and disadvantages of proceeding without an attorney. While Mr. Bledsoe was informed several times about the requirement that he follow the rules and procedures of court, he was given no explanation as to the consequences of failing to comply with those rules, such as the inability to secure the admission or exclusion of evidence, or the failure to preserve arguments for appeal. There was simply no discussion about the substantive risks of proceeding without counsel. Furthermore, the reference to the State's offer of a thirty-five-year sentence on a plea of guilty to the rape and burglary charges did not include a full disclosure about the range of penalties Mr. Bledsoe faced on any of the charges. Finally, notwithstanding any inference suggested by the trial court's statement that the public defender "can take the case from beginning to end if you want him to," Mr. Bledsoe was not informed explicitly of his constitutional right to an attorney, nor was any inquiry made as to his ability to afford an attorney.

*Bledsoe*, 337 Ark. at 409, 989 S.W.2d at 513–14. Similarly, this court held in *Hatfield v. State*, 346 Ark. 319, 57 S.W.3d 696 (2001), that the defendant's waiver of the right to counsel was not knowing and intelligent because the trial court failed to make him aware of the dangers and disadvantages of representing himself, as required by *Farretta*. In the present case, I do not believe that appellant was sufficiently advised of the consequences of waiving

13

his right to counsel. The trial court certainly advised against self-representation and made it clear that rules of criminal procedure and rules of evidence must be followed. However, there was absolutely no discussion of the potential consequences of failing to follow these rules. Thus, the trial court fell short of its weighty responsibility of ensuring that the defendant's waiver of the right to counsel was made knowingly and intelligently, including a specific warning of the danger and disadvantages of self-representation (or a record showing that the defendant possessed such required knowledge from other sources). *See Bledsoe, supra.*

Additionally, this court has held that the assistance of standby counsel can rise to a level where the defendant is deemed to have had counsel for his defense, thereby mooting any assertion of involuntary waiver. *Bledsoe*, 337 Ark. at 410, 989 S.W.2d at 514. Whether such assistance rises to that level is a question that must be answered by looking at the totality of the circumstances. Our cases on this issue demonstrate that the assistance must be substantial, such that counsel was effectively conducting a defense. *Id*. Here, appellant conducted voir dire, opening and closing statements, and all cross-examination of witnesses on his own. In fact, in the sole point briefed on appeal, appellant sought to have stand-by counsel help him articulate his objection but was told "Mr. Davis is not the lawyer in the case." Accordingly, there is no basis in the record for holding that standby counsel substantially assisted such that the issue of involuntary waiver would be moot.

Finally, I take this opportunity to propose a list of questions to aid circuit courts faced with defendants who wish to represent themselves at trial.

• Do you understand that you have an absolute, constitutional right to an attorney and that if you cannot afford one, I will appoint an attorney at no cost to you?

• You are charged with _____ and face a penalty of [insert minimum and maximum]. [If multiple convictions, sentences can be imposed consecutively.]

• Are you able to read and understand legal documents?

• What is your prior experience with the legal system?

• If you represent yourself, you will be held to the same standards as an attorney, including the requirement of following the Arkansas Rules of Evidence and Rules of Criminal Procedure.

• Now I must advise you of some of the dangers and disadvantages of representing yourself. If you do not know the rules of evidence, you may not be able to admit evidence that is important to your case or to exclude evidence that should not come in. There may be possible defenses and other rights of which counsel would be aware, and if those are not timely asserted, they may be lost permanently. In addition, if you fail to make a timely objection during trial, you will not be able to raise arguments of error in an appeal. These are just examples of the possible consequences of choosing to represent yourself; there are many others.

• Finally, I strongly advise against representing yourself, as you will be at a great disadvantage compared with an attorney, who has legal training and experience.

• Do you have any questions about anything we have just discussed?

• Do you still wish to represent yourself and waive your right to have an attorney represent you?

This list is my attempt to propose a practical—and constitutionally sufficient—framework to guide circuit courts.[4] Of course, each case turns on its own facts and may require additional or different inquiries.

---

[4]*See also* 3A Trial Handbook for Arkansas Lawyers § 90:14 (2018–2019 ed.), "Procedure for self-representation; *Faretta* colloquy"; *Parker v. State*, 93 Ark. App. 472, 220 S.W.3d 238 (2005) (Baker, J., concurring).

I respectfully dissent.

HART, J., joins.

*Ronald L. Davis, Jr. Firm, PLLC*, by: *Ronald L. Davis, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Chris R. Warthen*, Ass't Att'y Gen., for appellee.