Cite as 2021 Ark. App. 369

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–20–590

| | | |
|---|---|---|
| GARY LEWIS BROWN | | **Opinion Delivered** September 29, 2021 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION |
| V. | | [NO. 60CR-19-3302] |
| STATE OF ARKANSAS | | |
| | Appellee | HONORABLE HERBERT THOMAS WRIGHT, JR., JUDGE |
| | | AFFIRMED |

## MIKE MURPHY, Judge

Appellant Gary Lewis Brown was found guilty of theft by receiving and fleeing by a Pulaski County Circuit Court jury. He was sentenced to an aggregate term of thirty-five years' imprisonment. His sole argument on appeal is that the circuit court erred in permitting him to represent himself at trial because he did not knowingly and intelligently waive his right to counsel. We affirm.

On June 17, 2019, Brown stole the courtesy van from the Guest Inn and Suites hotel in Little Rock. The hotel's general manager noticed the van was missing and checked the hotel's surveillance video. She saw appellant take the keys from the hotel counter, get in the van, and drive away. She then called the police.

On June 24, 2019, North Little Rock Police Officer Wade Tollett saw Brown in the stolen van and attempted to stop him. Brown fled, and the police gave chase. Brown eventually wrecked the van and was arrested.

The State charged Brown as a habitual offender with theft by receiving, a Class C felony, and fleeing, a Class D felony. Brown signed an affidavit of indigency, and the circuit court ordered that he be represented by the public defender's office. At a pretrial hearing on August 14, 2019, the State informed the court that Brown had "approximately 29 prior felony convictions" that included "a lot of forgery, but there is also theft of property, theft by receiving, at least two counts of robbery, drug charges[,] and felon in possession of a firearm." On January 8, 2020, another pretrial hearing took place. The following colloquy occurred:

| | |
|---|---|
| PUBLIC DEFENDER: | Jason Kordsmeier for Mr. Brown, Your Honor. I believe Mr. Brown has a motion for the Court this morning. |
| THE COURT: | Mr. Brown? |
| BROWN: | Yes, Your Honor. I have actually, probably about two weeks ago, sent in a motion to proceed pro se in front of the Court, duly notarized in Desha County and sent to the Clerk. I assume you would have received it by now. |
| THE COURT: | We checked the computer this morning and we have not received that motion. Mr. Brown, you are set for trial tomorrow. Are you going to be ready to represent yourself tomorrow? |
| BROWN: | If I can receive the discovery that I requested in that same motion then, yes, sir. |
| THE COURT: | Well, since we don't have that motion, we don't know what that is. You will have to let us know. |

BROWN: Well, I apologize, sir. I have the certificate of service from me sending it if that will stand in lieu of it, but I sent it two weeks ago to the clerk here and so.

. . . .

THE COURT: Mr. Brown, you are charged with Fleeing, a Class D Felony. Is there a habitual allegation?

BROWN: Yes, sir.

THE COURT: Large or small?

BROWN: Large.

THE COURT: You are also charged as a habitual offender. You could receive up to 15 years in the Department of Corrections and a fine of up to $10,000 and Theft by Receiving, a Class C Felony, for which you could receive from three to 30 years in the Department of Corrections and a fine of up to $10,000. That makes your exposure with these charges up to 45 years in the Department of Corrections and up to $20,000 in fines, and that is consecutive to whatever time you are serving now. Do you understand that?

BROWN: Yes, sir.

THE COURT: What was the last grade you completed in school?

BROWN: I have two years of college, sir.

THE COURT: Do you have any trouble reading and writing?

BROWN: No, sir.

THE COURT: Do you understand that if I allow you to represent yourself, you are going to be treated just like an attorney, which means there may be evidence that you want me to see and if you can't lay a proper foundation and the State objects, I won't see that information. Also, there may be information that the State wants me to see that you don't want me to see and if you can't form a proper objection, I may see that information. Do you understand that?

3

BROWN: Yes, sir.

THE COURT: You are currently in custody of the Arkansas Department of Corrections and you understand that representing yourself is difficult enough if you are in the free world, but incarcerated it makes it a lot tougher.

BROWN: Yes, sir, that is correct. I mean as I said, I have zero confidence and zero cooperation with my attorney and so I feel like that is the only option that I have.

THE COURT: You understand that if you represent yourself, you are not going to get access to anything that you don't normally get access to in the Department of Corrections.

BROWN: I understand that completely.

THE COURT: As I understand, there may be some video evidence in this case, and I doubt that they are going to provide you equipment to view that evidence on.

BROWN: Sir, I have viewed it. I mean other than the additional discovery I have requested, it becomes obvious from what is present, that I requested that it be provided, as in missing portions of the video that has been edited. I mean, all that was included in my motion. But other than that, I am ready to proceed.

. . . .

THE COURT: Are there witnesses you wish to subpoena?

BROWN: I would wish to subpoena those witnesses if I had that information, which is available in the video by law enforcement that was not included to me and so I don't know if the prosecution didn't intend on them testifying. But past that, I would be submitting a motion to suppress the video due to their being no tangible complainant to that, no video has –

THE COURT: Whoa, whoa, whoa, whoa, whoa. What is a tangible complaint?

BROWN: I'm sorry.

| | |
|---|---|
| THE COURT: | You are using a lot of terminology, Mr. Brown, that doesn't appear to apply in context, and I don't know if you are trying to use legal terms but the terms you are using aren't indicating that you have good enough knowledge to represent yourself and I am saying that not to insult you, but I want to caution anybody that choses to represent themselves and make sure that they understand. You are looking at 45 additional years in the Department of Corrections and I don't want you to make a decision, a hasty decision on this, and dig a deeper hole than you are in. |
| BROWN: | And that is correct, sir. Due to the admission of the MVR video where it starts, in the middle of the pursuit there is no tangible connection between me and this vehicle at the time of pursuit. And at the time that they say that the video was stolen, there is no other person that appears in this video. There is no time date stamp. There is no tangible progression from where they say that this individual takes these keys from this vehicle and leaves, there is no contact with an additional person, meaning this video doesn't proceed to the fact where law enforcement is called, and there is no establishment of time or date on this video, that I have seen. Maybe that's just on the copy that we have, but that's not established in the one that I have. |
| THE COURT: | If I order the prosecutor to either provide all these videos that you believe exist, or declare that they don't exist and he gives those to you, what are you going to be able to do with them? You are not going to be able to watch them unless you tell me you've got the equipment to view these videos in the Arkansas Department of Corrections. |
| BROWN: | No, sir. I mean, I assume that equipment exists here. I assume since they are entering them as evidence, they intend on using them as exhibits. Therefore, the means to display it exists here, to where I would be able – |
| THE COURT: | It does exist here. |
| BROWN: | Right. |

5

THE COURT:    But if they are playing them in the middle of trial, that doesn't necessarily mean that you've got access to them prior to that. And that is my point. Your attorney has got that equipment and has had you brought up, and although you are here today, I will tell you that the Court has issued three orders to have you brought up before now and the Sheriff's Office has just not transported you. That is not your attorney's fault. That is the sheriff's fault.

. . . .

THE COURT:    MR. BROWN, DO YOU STILL WISH TO REPRESENT YOURSELF?

BROWN:    Yes, sir.

. . . .

THE COURT    The State is ordered to make inquiry to the North Little Rock Police Department, make sure that you have all the written reports and all the videos that exist. If there were videos in existence and no longer in their possession, they are to be identified and explain why, and provide that information to Mr. Brown at his mailing address. Mr. Brown, do you still wish to represent yourself?

BROWN:    Yes, sir, that is correct.

. . . .

THE COURT:    Time is tolled. State, you are also ordered to contact the Sheriff's Office and see if there was any documentation taken from Mr. Brown when he was booked in and that documentation is to be released to Mr. Brown. Mr. Brown, we have set this trial off to February the 13th. You are entitled to represent yourself if that is what you wish to do. I am ordering the Public Defender's Office to give you his entire file. You need to get whatever witnesses you are going to subpoena. When we come back here on February the 13th we will have a jury trial.

BROWN:    Yes, sir. Am I to understand that that is also the motion cutoff date as well?

THE COURT:          No. The motion cutoff date is going to be well before that. So if you are going to file a motion, you need to -- when you file the motion, a copy needs to come directly to the Court, not just the Clerk, and it needs to ask for a hearing date. If you delay filing your motion and we don't have time to hear that before this trial, then that motion will be waived.

BROWN:              Yes, sir.

. . . .

THE COURT:          And Mr. Brown, again, I am going to treat you like an attorney with respect to how you may proceed and so if you attempt to resolve this with the prosecutor short of trial, you are going to have to do it before February the 13th because if you show up here February the 13th and you are not ready, it is not going to go well for you in the trial. By the same token, if you change your mind and wish to have an attorney appointed to you, you have got to notify the Court as soon as possible. Do you understand?

BROWN:              Yes, sir.

At a third pretrial hearing that took place on February 6, 2020, Brown was again

warned about the dangers of self-representation. The following colloquy transpired:

BROWN:              I have a motion to suppress some of the hearsay statements that are going to go to the jury. I am assuming that some of these ADR's, where it is basically statements of identification without a witness. As I said, none of these officers actually have physically identified me or placed me with this vehicle, other than a hearsay statement alluding to someone at the scene of the arrest doing so, and they are not listed as witnesses. So in addition to that, I don't know if you received my motion for the additional discovery of the MVR for the arresting officer, which was the only one that had first hand point of view of the actual arrest and/or my actual encounter with law enforcement. Prior to that, there is none of

7

those. In addition, the motion to suppress was going to be in reference to the video obtained from the Little Rock hotel or St. Vincent and that's going to be an authentication issue as well as the integrity of the evidence. As I said, they had ample time to obtain a warrant for it, they did not. There is no format that it was gained in. There is no chain of evidence for the transfer of this video. It was like it was just pulled out of the wind. So, I mean, as I said, *U.S. versus Vinson*, even though they had it available at the time, they are still required to seek the warrant for it, just to cover its admissibility. As I said, there is no way for me to authenticate this video. Yes, I have had the opportunity to see it. All it is, is prejudicial hearsay with no one to having been shown any type of lineup involving me in reference to this. So, I don't understand what the purpose of this video is, other than to show me that you have it and in addition to that, it is edited to a snip-it just showing this encounter of this person at this front desk and then it disappears. There is no encounter with law enforcement. There is no encounter or any additional discovery of this vehicle missing and so.

THE COURT: Mr. Brown, it is still apparent to me, and I think I have told you this before. You don't have a good grasp of the law. I can tell by what you said, one of the reasons why the state would attempt to introduce that, there is no motion to suppress that is necessary for hearsay or for the chain of evidence. She is going to have to lay the foundation before I will admit it and the Jury sees it anyway. Do you want an attorney to represent you?

BROWN: No, sir.

. . . .

THE COURT: And again, Mr. Brown, you do not have a good grasp of the law and it is in your best interest to have an attorney that is experienced to handle this, and I am offering you that attorney. Do you still wish to represent yourself?

BROWN: Yes, sir.

THE COURT: If you change your mind at any time, please let me know, but you can't do it the morning of trial.

BROWN:                    And I understand that as well.

Brown's jury trial was held on March 2, 2020. He was permitted to proceed pro se and was found guilty of theft by receiving and fleeing. Following the jury's recommendation, the court sentenced Brown to an aggregate term of thirty-five years' imprisonment.

The Sixth Amendment to the United States Constitution, made obligatory upon the states by the due process clause of the Fourteenth Amendment, guarantees an accused the right to have the assistance of counsel for his defense. *Oliver v. State*, 323 Ark. 743, 918 S.W.2d 690 (1996) (citing *Faretta v. California*, 422 U.S. 806 (1975)). The constitutional right to counsel is a personal right and may be waived at the pretrial stage or at trial. *Mayo v. State*, 336 Ark. 275, 984 S.W.2d 801 (1999). A defendant in a criminal case may invoke his right to defend himself pro se provided that (1) the request to waive the right to counsel is unequivocal and timely asserted; (2) there has been a knowing and intelligent waiver; and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *Id.*

Brown's sole argument on appeal is that he did not knowingly and intelligently waive his right to counsel. We will reverse a circuit court's finding that a defendant knowingly and intelligently waived his right to counsel only if the finding is clearly against the preponderance of the evidence. *Pierce v. State*, 362 Ark. 491, 497, 209 S.W.3d 364, 367 (2005).

The constitutional minimum for a knowing and intelligent waiver of the right to counsel requires that the accused be made sufficiently aware of his right to have counsel

9

present and of the possible consequences of a decision to forgo the aid of counsel. *Daniels v. State*, 322 Ark. 367, 908 S.W.2d 638 (1995). The accused must "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

The Arkansas Supreme Court has held that the circuit court maintains a weighty responsibility in determining whether an accused has knowingly and intelligently waived his right to counsel. *Jarrett v. State*, 371 Ark. 100, 263 S.W.3d 538 (2007). Determining whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the background, the experience, and the conduct of the accused. *Walton v. State*, 2012 Ark. 336, 423 S.W.3d 56. A specific warning of the danger and disadvantages of self-representation, or a record showing that the defendant possessed such required knowledge from other sources, is required to establish the validity of the waiver. *Id*. Significantly, every reasonable presumption must be indulged against the waiver of the fundamental constitutional right to counsel. *Id*.

In this case, the preponderance of the evidence supports the circuit court's finding that Brown knowingly and intelligently waived his right to counsel because the circuit court pointedly advised Brown of the drawbacks of self-representation. When Brown told the court he wanted to represent himself, the court informed him that he would be held to the same standards as an attorney. It discussed the difficulties of laying a proper foundation and the consequences of failing to form a proper objection. Brown acknowledged that he understood. The court also warned Brown about the difficulties associated with preparing

for trial while in custody. Brown acknowledged that he understood. Additionally, in a dialogue with the court, Brown asked about the cutoff date for motions, and the court warned him that failing to timely file his motions could result in a waiver. Brown acknowledged that he understood. The court twice warned Brown of the seriousness of the charges he was facing and asked him if he wanted a court-appointed attorney. Brown again declined and acknowledged that he understood.

Regarding his background and experience, Brown told the court that he completed two years of college and was proficient in reading and writing. The record additionally establishes that Brown had experience in the criminal-justice system. Brown had approximately twenty-nine prior felony convictions. On this record, we are satisfied that Brown made his decision with open eyes, choosing to forgo legal counsel with full awareness of the dangers and pitfalls associated with self-representation. A preponderance of the evidence supports that Brown knowingly and intelligently waived his right to counsel. We affirm.

Affirmed.

GLADWIN and BROWN, JJ., agree.

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.

11