Cite as 2025 Ark. App. 273

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CR-24-286

| | | |
|---|---|---|
| ANTONIO MADISON | | Opinion Delivered April 30, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR-21-498] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE ALEX GUYNN, JUDGE |
| | APPELLEE | |
| | | AFFIRMED; REMANDED TO CORRECT THE SENTENCING ORDER |

**CINDY GRACE THYER, Judge**

Antonio Madison was convicted by a Jefferson County jury of one count of possession of a firearm by certain persons and was sentenced to five years' incarceration in the Arkansas Division of Correction. He now appeals his conviction, claiming that the circuit court erred in finding that he knowingly, voluntarily, and intelligently waived his right to counsel. We find no error and affirm his conviction; however, we remand to the circuit court to correct an error in his sentencing order.

On September 24, 2021, Madison was charged with possession of a firearm by certain persons and possession of marijuana with purpose to deliver. The information was later amended in July 2022 to add a firearm enhancement and to state that Madison had been previously convicted of possession of a firearm by certain persons.

Madison was initially represented by private counsel, but by the time of the November 3, 2022 omnibus hearing, he expressed displeasure with his counsel's representation. However, upon questioning by the court, Madison claimed that it was a misunderstanding and stated that he was satisfied with counsel continuing to represent him.

In January 2023, the court was again notified that Madison was displeased with his counsel's representation. Due to this conflict, his attorney asked to be relieved as counsel and informed the court he would be willing to refund Madison's money so that Madison could quickly retain new counsel. Because Madison had recently undergone an Act 3 evaluation and the report had yet to be received, the circuit court denied counsel's request to withdraw but told Madison that he was not prohibited from finding other counsel during that time.

At the next hearing on February 7, 2023, Madison informed the court that he had yet to find another attorney. He stated he had intended to represent himself—which he claimed to have done before and knew the process—but because he had not received all the evidence from his prior counsel, he had again decided to obtain legal representation. The circuit court explained to Madison that he could still represent himself and that he could obtain the requested information by asking his then attorney. Otherwise, if he wanted a new attorney, he could get one. Madison informed the court that he would hire counsel within the next thirty days, and the court agreed to give him time to find new counsel.

Court reconvened on March 6. Madison informed the court that he had not retained an attorney and did not plan to do so; instead, he wanted to represent himself. The State

noted that Madison's Act 3 report was still outstanding and that Madison could not waive counsel while that was pending. However, acknowledging Madison's desire to proceed pro se, the court had the following discussion with him:

COURT: Now, Mr. Madison, you have every right to represent yourself, sir.

MADISON: Yes, sir.

COURT: But – now listen to me. I got to treat you just like I treat these other folks that went to law school for three years and have been practicing for some time.

MADISON: Yes, sir. I understand.

COURT: And is his charge on a 100 percent?

MADISON: It's been enhanced twice so –

STATE: It would be 100 percent, Your Honor, looking at the offense date.

COURT: Now you listen to me. This is your life; it ain't mine.

MADISON: Yes, sir. I know.

COURT: I'm going to go home. Possession of firearm by certain persons, those charges are – they carry 100 percent of the time, now, sir.

MADISON: I understand.

COURT: I want you to be aware of what you're doing.

MADISON: I understand. I understand. I signed a plea bargain when I was 18 years old that I wouldn't sign again, you know.

COURT: That – that –

MADISON: And –

COURT: But you ain't went to law school not near a day.

3

MADISON:      No, sir. Every experience I've had with a lawyer so far, especially public defenders, have been, you know, not in my favor. The only time I've ever been in trouble and ever been convicted of a felony, sir, I've always been represented by public defenders.

COURT:        It could be that you were guilty. I don't know.

MADISON:      Well, I was. I broke into a car, sir. And I admitted to that. I did that, but the second offense, sir, the one that I'm classified as a violent offender on, sir, I did not do that. And my public defender at the time works for the prosecuting attorney's office now, sir. So I would have – I would have assumed that she would have been, you know, informed them of my non-violent – non-violent status.

COURT:        Sir, I –

MADISON:      I understand.

COURT:        I see where you are going with this. I – I'm just trying to do my job ~

MADISON:      Me too.

COURT:        ~ to help you out –

MADISON:      I understand. I understand.

COURT:        ~ but if you want to know everything, you go – go ahead on. I done seen folks make that mistake before –

MADISON:      Yes, sir.

COURT:        ~ but you're more than welcome.

Another omnibus hearing was held on April 3, 2023. By that time, the Act 3 report had been completed, and Madison had been found fit to proceed. Madison reiterated his desire to represent himself at trial. The court did not grant Madison's request at that time; instead, it appointed the public defender to be his co-counsel to discuss his options. The

4

circuit court reminded Madison that, if he chose to represent himself, he would be held to the same high standards as an attorney even though he had never attended law school.

At the status hearing on July 6, the public defender informed the court that Madison wished to proceed pro se. The public defender told the court that Madison had expressed concern about his representation because he is a former prosecutor. The public defender stated he was willing to recuse so that Madison could represent himself.

Following counsel's revelations, the circuit court inquired into Madison's desire to represent himself and to have counsel removed. The following colloquy occurred:

MADISON: It is a problem with the public defender now. I had an old public defender that had ambitions of being a prosecutor and that turned out wrong for me so I would like to represent myself. The cocounsel you had for me last week I believe was this gentleman (defendant point to [a different attorney], and I would rather have him than someone who has worked for the prosecuting attorney.

COUNSEL: I guess I didn't seem cold enough.

MADISON: That is not – like you said at the beginning of this, this is my life and this is everything. This is me. So I would rather have someone that I feel comfortable with that I trust and that my life – it is my life that is in their hands as well. You know what I am saying?

COURT: You haven't paid a nickel for him. So you have to get what we give you. All right? So –

MADISON: As cocounsel. Yes, I will accept him as cocounsel. I have the sixth amendment right for self representation.

COURT: Well what I am getting at is you really ain't got no choice. I'm going to let you represent yourself but I'm really trying to slow this train wreck. Okay? But he is going to be there to assist you.

MADISON: And to the rights of the defendant?

5

COURT: What do you got to say, sir?

MADISON: Under the Faretta right, I have got the right to present my case the way that I want to and not have it jeopardized by my cocounsel.

COURT: He isn't going to do nothing. He is just there to –

MADISON: Yes, sir. That is what I am saying. You said I had to accept. That would be a violation of my sixth amendment right, sir. As well as the Code of Arkansas Judicial Conduct. I have a right to be heard, sir. That is all I am saying.

COURT: I am listening to you this morning. I am glad I had a long break before I came to work today. But, sir, you have every right to represent yourself. [Counsel] is going to be your cocounsel, all right? You are going to present your case however you want to present it. But you – hold on, before we leave here I am going to ask you some questions to make sure you are competent and understand what you are doing. All right? I had one young man represent himself and it didn't turn out too well for him but he ended up appealing and it didn't work for him. So I want to make sure you –

MADISON: I understand that I have no right to appeal if I represent myself. I understand that. I do this willingly and knowingly that it is my right.

COURT: That ain't that simple.

MADISON: Yes, sir.

COUNSEL: You do have a right to appeal if you represent yourself.

. . . .

COURT: Mr. Madison, you have the right to represent yourself. I want to make sure that it is absolutely clear, I need you to file a waiver with the court. All right? But I need to ask you these questions. You understand you have the right to counsel, right?

MADISON: Yes, sir.

COURT: You have knowledge of these crimes you are charged with? You understand the maximum penalties. Is that correct?

MADISON: Yes, sir.

COURT: All right. You have to abide by the rules just like a regular attorney. Do you understand that?

MADISON: Yes, sir.

COURT: And you can control the witnesses and ask them questions just like anybody else. Do you understand that?

MADISON: Yes, sir.

COURT: You have the right to a proper defense to subpoena witnesses and represent yourself in a competent manner just like any other attorney. Do you understand that, sir?

MADISON: Yes, sir.

COURT: You understand that you don't have the knowledge concerning the law and this may be damaging to your defense. You haven't been to law school so you don't know all the laws so that could hurt you. Do you understand that?

MADISON: Yes, sir.

COURT: And you still want to represent yourself, is that correct?

MADISON: Yes, sir.

COURT: All right. I am going to appoint Mr. King the cocounsel to you. But I need you to get that in writing to me, to the Court. Okay?

MADISON: Yes, sir.

Madison agreed to file the waiver within the next week.[1] Counsel objected, and the court stated, "[Y]ou aren't his attorney. But you are going to be cocounsel. We done did this show before. As a matter of fact, I got Darnell Washington. I am reading the appeal he had. This is why I am asking these questions straight from the appeal." Someone asked, "You didn't get overturned, did you?" The court responded, "No, Sir, I didn't. That rarely happens. Thanks to the State, they look out for me."

The court again addressed Madison and stated, "So you are going to represent yourself. Mr. Madison, it is your show now. I strongly advise you not to do it. But if you want to you have every right to do so . . . . But you have every right to do that. Just get that in writing so we can put it in the record in case we have to appeal it. They will know I have advised you of all your rights."

The court then addressed motions to suppress previously filed by Madison's counsel. Madison initially stated that he wished to withdraw those motions, but after a brief discussion with the court, he decided to adopt them.

The suppression hearing was held on September 7. Madison was present with co-counsel. Before testimony was taken, the court again addressed Madison's desire to represent himself. The court initiated the following inquiry:

COURT:     Mr. Madison, I know I went over this before, but I'm going to go over it again. You have a right to an attorney; you understand that?

MADISON:   Yes, sir.

---

[1]It does not appear a written waiver was ever filed.

COURT:     And you have chosen to represent yourself; is that correct?

MADISON:   Yes, sir.

COURT:     You know I have to hold you to the same standards I hold every other attorney?

MADISON:   Yes, sir.

COURT:     I advised you against it, but you still want to represent yourself; all right?

MADISON:   Yes, sir.

COURT:     And I have Mr. King sitting next to you second chair if you have any questions. All right?

MADISON:   I appreciate it.

After this colloquy, evidence was taken on the motions to suppress his custodial statements and physical evidence. Madison, after speaking with co-counsel, invoked the rule, cross-examined the State's only witness, and argued the merits of the motions. In arguing the motion to suppress his custodial statement, he specifically discussed the United States Supreme Court's holding in *Miranda v. Arizona*, 384 U.S. 435 (1966), and argued that his statements should be suppressed because he had been handcuffed, was in custody, and had not been properly Mirandized. After the court denied the motion to suppress his statement, Madison asked the court to rule on a motion to dismiss he had filed, which the court also denied. Madison then withdrew his motion to suppress physical evidence. Before the hearing ended, the court again asked Madison whether he wished to represent himself at trial, and Madison stated that he did. Because Madison said that he wanted to represent himself and did not want assistance, counsel asked to be excused. The court denied counsel's request,

9

noting that counsel had been a "great help" to Madison at the hearing as evidenced by his explanation of "the rule" to Madison.

A final omnibus hearing was held on October 10, 2023. At the start of the hearing, counsel reminded the court that Madison wished to represent himself and, again, asked to be excused from the matter. The court denied counsel's request to be excused, stating that counsel need only remain available to assist Madison. The court then inquired, once again, into Madison's desire to represent himself. The following discussion occurred:

COURT: Mr. Madison, as I have explained before, you know, you have a right to counsel. You don't want counsel, right?

MADISON: No, sir.

COURT: And I strongly advised you against it and you still want to represent yourself; is that correct?

MADISON: Yes, sir.

COURT: And you understand that you have not been trained in law, but you still want to represent yourself?

MADISON: Yes, sir.

COURT: I'm going to do this every time we go so I can make a good record of that you understand what you're doing.

MADISON: That's fine with me.

After the court confirmed that Madison still desired to invoke his right to self-representation, counsel again renewed his request to be excused. Once again, the court denied his request, stating that counsel only needed to be available in case Madison needed assistance; otherwise, he need not do anything.

Madison then requested that the court recuse itself from the matter due to the court's remarks at the July 6 hearing in which the court stated that the State "looked out" for him to keep him from being overturned on appeal. This, Madison claimed, showed that the State and the court were working together. The court denied the motion.

Madison's charges were tried to the jury on October 16, 2023. Before testimony was taken, the court again inquired into Madison's desire to represent himself:

COURT: And, Mr. Madison, I'm going to go over this one more time: You choose to represent yourself; is that correct, sir?

MADISON: So we just not going to address my notice of appeal?[2]

COURT: I did, sir. All right. Now, I'm going to go over these questions one more time. We're about to have a trial today. You choose to represent yourself; is that correct, sir? Is that correct, Mr. Madison?

MADISON: Yes, sir. I do.

COURT: All right. And you understand the minimum and maximum that you could receive today; is –

MADISON: Yes, sir. I do.

COURT: And you understand that you do not have any legal training?

MADISON: Yes, sir. I do.

COURT: There could be consequences from your representing yourself?

MADISON: Yes, sir. I do.

COURT: You understand that I appointed Mr. King as co-counsel –

---

[2]Madison had previously filed a pro se "motion for appeal" of the denial of his motion to dismiss, which the court treated as a motion for reconsideration and denied.

MADISON:    Yes, sir. I do.

COURT:      ~ as counsel to you? All right. You knowingly and willingly are doing this; is that correct?

MADISON:    Yes, sir. I do.

COURT:      All right.

COUNSEL:    I object to that appointment.

COURT:      Sir?

COUNSEL:    I said I still object to that appointment.

COURT:      Okay. I understand. You object to the appointment, but, Mr. King, I'm leaving you on the case just in case he has any –

COUNSEL:    For the record.

COURT:      ~ questions. You understand that you can control – you can ask questions from the witnesses like anybody – any regular attorney; is that correct?

MADISON:    Yes, sir. I do.

COURT:      I have to hold you to the same standards that I hold the regular attorney; do you understand that, sir?

MADISON:    Yes, sir. I do.

COURT:      And you understood that you had the right to subpoena any witnesses that you have in this case; is that correct?

MADISON:    Yes, sir. I do.

COURT:      All right. And you understand that you don't have any knowledge of the law; is that correct? And it could be damaging to your defense; is that correct?

MADISON:    Can you repeat that?

12

COURT: That you don't have any knowledge of the law and it could be damaging to your defense; do you understand that?

MADISON: Yes, sir. I see that the Court is taking advantage of my lack of knowledge of the law. So yeah, Yes, sir, I understand that.

COURT: All right. But you're ready – we are going to have a trial today –

MADISON: No. I'm not ready for trial. I'm trying to file my appeal.

COURT: Sir, I addressed –

MADISON: But since the Court and the State are ready, then I can only follow what the Court and the State are doing so . . .

COURT: Mr. Madison, we addressed this a number of times on the record. I got to hold you to the same standards as everybody else.

MADISON: I understand that, sir.

COURT: I'm not gong [sic] to let you outtalk me. You've chosen to represent yourself –

MADISON: Yes, sir. I have.

COURT: – so we're going to move forward today.

MADISON: Yes, sir.

After the court confirmed that Madison still wished to represent himself, trial commenced. The State nolle prossed the drug-possession charge and proceeded only on the felon-in-possession-of-a-firearm count. The State asked Madison whether he wanted to stipulate to his status as a felon or require the State to put on proof of his status as a felon.

Despite standby counsel's advice to stipulate to his status,[3] Madison chose to have the State put on proof of his prior convictions.

The State then presented the court with an order denying Madison's pretrial motions, and Madison objected. The court signed the order over Madison's objection.

After these pretrial matters were concluded, the State and Madison began the voir dire of the prospective jurors. However, when Madison began to have difficulty, he passed voir dire off to standby counsel to complete the questioning of prospective jurors. When the next set of prospective jurors was called, Madison resumed questioning. When voir dire was completed, the court and counsel explained to Madison the jury-selection process, including the exercise of strikes for cause and peremptory challenges. Madison then exercised one of his peremptory challenges.

Once the jury was empaneled. Madison proceeded to give an opening statement, to call and question witnesses, to object to testimony, and to respond to objections by the State. Standby counsel argued the motion for directed verdict on Madison's behalf after the State had rested and renewed the motion at the close of all the evidence. In his case-in-chief, Madison requested standby counsel's assistance in the questioning of the defense witness after the State objected.

At one point during trial, Madison appeared to be struggling with admitting an exhibit, and the court explained to Madison that it could not tell him how to run his case.

---

[3]Counsel advised Madison that failure to stipulate would prejudice him.

The court then told Madison that he was his own attorney, and the court's job was to "sit there and call balls and strikes." Madison said he understood but asked the court to "educate" him on how to proceed. The court reiterated that it had advised Madison of this type of issue before trial and that lawyers know what they are doing. Despite Madison's confusion, the court allowed his exhibit to be admitted into evidence.

Finally, Madison presented his closing argument. When the State approached the bench and objected to his attempting to introduce facts not in evidence, Madison explained his argument and complained he did not understand what the State's issue was. Again, the court stated that this was the problem with self-representation—that Madison did not know the law—and sustained the objection. Madison subsequently objected to the State's rebuttal, arguing that the prosecutor's statement that the detective was the only witness to testify highlighted his (Madison's) failure to testify.

After retiring for deliberation, the jury returned a verdict of guilty. Standby counsel presented closing argument on Madison's behalf at sentencing. After the jury returned with verdict recommending a five-year sentence in the Arkansas Division of Correction,[4] which the court accepted and imposed, Madison asked how to perfect an appeal. The court told him that standby counsel would explain how to do so.

Madison filed a timely appeal.

---

[4]Although he was sentenced as a habitual offender, the sentencing order does not reflect that determination.

On appeal, Madison argues that the circuit court failed to determine whether he was competent to represent himself; failed to inquire into his level of education, his criminal trial exposure, his knowledge of trial practice or his ability to hire counsel; and failed to make a ruling on whether he knowingly, voluntarily, and intelligently waived his right to counsel.

It is undisputed that a defendant has a constitutional right to self-representation. *See Faretta v. California*, 422 U.S. 806 (1975). This necessarily requires the waiver of the right to be represented by counsel, which is a personal right that may be waived at the pretrial stage or at trial. *E.g.*, *Jarrett v. State*, 371 Ark. 100, 104, 263 S.W.3d 538, 542 (2007). A criminal defendant may invoke his right to defend himself pro se if "(1) the request to waive the right to counsel is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues." *Id.*, 263 S.W.3d at 541. Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights, and it is the State's burden to show that a defendant voluntarily and intelligently waived his fundamental right to the assistance of counsel. *Walton v. State*, 2012 Ark. 336, at 8, 423 S.W.3d 56, 61. And a request to waive counsel must not leave any doubt that the waiver of counsel is what the defendant wants. *Reed v. State*, 2017 Ark. 246, 524 S.W.3d 929.

On appeal, we will reverse a circuit court's finding that a defendant knowingly and intelligently waived the right to counsel only if the finding is clearly against the preponderance of the evidence. *Pierce v. State*, 362 Ark. 491, 497, 209 S.W.3d 364, 367 (2005). The Sixth Amendment to the United States Constitution guarantees an accused the

16

right to have counsel assist in his defense. *E.g.*, *Dunn v. State*, 2019 Ark. App. 398, at 26, 585 S.W.3d 681, 696. Nonetheless, a criminal defendant has the right to self-representation at trial, provided that the waiver of counsel is knowingly and intelligently made. *E.g.*, *id.*

The constitutional minimum for determining whether an accused knowingly and intelligently waived the right to have counsel present is that the accused be made sufficiently aware of the right to the aid of counsel and of the possible consequences of a decision to forgo that right. *E.g.*, *id.* at 27–28, 585 S.W.3d at 696–97. Determining whether a defendant has made an intelligent waiver of the right to counsel depends on the particular facts and circumstances of the case, including the background, experience, and conduct of the accused. *E.g.*, *id.* at 27, 585 S.W.3d at 696. "A specific warning of the dangers and disadvantages of self-representation, or a record showing that the defendant possessed such required knowledge from other sources, is required to establish the validity of a waiver." *E.g.*, *id.* at 27, 585 S.W.3d at 696. This ensures that when a defendant waives the right to counsel, "the record will establish that he knows what he is doing, and his choice is made with eyes open." *Faretta*, 422 U.S. at 835.

In this case, the preponderance of the evidence supports a finding that Madison knowingly and intelligently waived his right to counsel. After Madison informed the circuit court that he wanted to represent himself, the court informed him that he would be held to the same standards as "every other attorney." The court advised Madison on multiple occasions that he had the right to counsel as well as the dangers and risks of proceeding pro se, but Madison insisted each time that he desired to represent himself. The court repeatedly

17

warned Madison that he was at a disadvantage because he had not been trained in the law. As to Madison's knowledge of conducting a trial, Madison stated he was aware of the minimum and the maximum sentence he was facing and that he was entitled to subpoena and call witnesses on his behalf. Despite the circuit court's cautionary instructions, Madison insisted on representing himself.

Furthermore, the record reflects that Madison was not a stranger to the trial process since he stated on the record that he had represented himself in the past. Moreover, even though his motion to suppress was ultimately denied, he correctly argued to the court a legal basis for the suppression of his custodial statement. Finally, he correctly argued to the court that he had a Sixth Amendment right to represent himself and even cited *Faretta* in support of his claim. Thus, the record clearly establishes that Madison knew what he was doing and made the choice to waive his right to counsel with his eyes open. *See Washington v. State*, 2020 Ark. App. 268, at 6, 599 S.W.3d 387, 391.

Because Madison knowingly and intelligently waived his right to counsel, the degree to which standby counsel participated in trial is irrelevant for appellate purposes. The degree to which standby counsel assisted the accused at trial becomes an issue for this court only when the waiver of counsel is determined to be invalid. *See, e.g., Dunn*, 2019 Ark. App. 398, at 29, 585 S.W.3d at 697. Such is not the case here. Madison made a knowing and intelligent waiver of his right to counsel. Accordingly, we affirm.

As for Madison's claim that the circuit court did not make a finding that he knowingly and intelligently waived his right to counsel, such finding is implicit in the court's decision

to allow Madison to represent himself.  The court, in making its determination, considered this court's opinion in *Washington*, which discussed in detail the *Faretta* factors and discussed at length the necessity for a waiver to be knowingly and intelligently made.  Only after such consideration did the court allow Madison to proceed pro se. Thus, such a finding is implicit in the circuit court's ruling.

As for Madison's claim that the court failed to inquire into his level of education, his criminal trial exposure, his knowledge of trial practice, or his ability to hire counsel, the court need not explicitly ask such questions. It is well settled that "a defendant's technical legal knowledge . . . is not relevant to an assessment of his knowing exercise of the right to defend himself" and that "the right of self-representation carries with it the responsibility for one's own mistakes." *Pierce v. State*, 362 Ark. 491, 497–98, 209 S.W.3d 364, 368 (2005) (citing, in part, *Faretta*, 422 U.S. at 835). In this case, the circuit court's repeated admonitions, Madison's statements regarding his past experiences with the criminal justice system (including his past experience representing himself), and the advice of standby counsel all show that Madison knew what he was doing and made the choice to waive his right to counsel with his "eyes open." *See Sirkaneo v. State*, 2019 Ark. 308, at 7, 586 S.W.3d 606, 609–10.

Finally, the sentencing order fails to show that Madison was sentenced as a habitual offender. We have held that a defendant is entitled to a corrected sentencing order to reflect habitual-offender status. *See, e.g.*, *Lawrence v. State*, 2020 Ark. App. 554, 614 S.W.3d 488.

And we may affirm a conviction but remand for the limited purpose of correcting the sentencing order. *See, e.g.*, *Battles v. State*, 2024 Ark. App. 198. We do so here.

For the foregoing reasons, we affirm Madison's conviction but remand for correction of the sentencing order.

Affirmed; remanded to correct the sentencing order.

GLADWIN and WOOD, JJ., agree.

*Law Office of Angela D. Kendrick*, by: *Angela D. Kendrick*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.